No. 21,710.

MINNIE HATFIELD, *Appellant*, V. THE GAZETTE PRINTING
COMPANY, *Appellee.*

SYLLABUS BY THE COURT.

1. LIBEL—*Imputing Unchastity—Mistake of Publisher No Legal Excuse.*
   A false charge in a publication that a woman, specifically named, is
   immoral and unchaste, constitutes a libel, and the fact that an honest
   mistake was made by the publisher in the use of plaintiff's name is not
   a legal excuse, as the law looks to the tendency and consequences of a
   publication rather than to the intention of the publisher.

2. SAME—*Identity of Party Libeled Sufficiently Shown.* As the publica-
   tion containing the charge of unchastity, and conceded to be false,
   specifically named the plaintiff as the wrongdoer, and as no one else of
   her name resided in the community, the provisions of section 126 of
   the civil code (Gen. Stat. 1915, § 7018) did not apply, and formal proof
   that the defamatory matter was published of the plaintiff was not
   necessary.

3. SAME—*Libel per se—General Damages Inferred.* General damages
   from such a false publication arise by inference of law and need not
   be proved.

4. SAME—*Question of Damages for Jury.* As no valid defense of the
   libel was made herein, the only question left for submission to the
   jury was the amount of damages sustained by the plaintiff.

5. SAME—*No Settlement Proven.* Certain facts relied on by the defendant
   are held not to constitute a settlement.

Appeal from Reno district court; FRANK F. PRIGG, judge.
Opinion filed October 12, 1918. Reversed.

*F. Dumont Smith,* and *Eustace Smith,* both of Hutchinson,
for the appellant.

*C. M. Williams,* of Hutchinson, for the appellee.

The opinion of the court was delivered by

JOHNSTON, C. J.: This was an action for libel. Plaintiff
alleged that the defendant, which owns a newspaper having
a large circulation in and about the city of Hutchinson, had
published in its Sunday morning issue the following of and
concerning the plaintiff:

"RAIDED ROOMING HOUSE—Sheriff Scott Sprout yesterday raided
the rooming house on First Avenue West conducted by Ruth Newman.

33—Kan.—3099.

Two girls, Bess Stolen and Minnie Hatfield, were charged with being inmates of an immoral house and the Newman woman with running an immoral house. They were released on $500 bail."

It was further alleged that the charge that plaintiff was an inmate of an immoral house was untrue, and that the publication caused her great mental anguish, humiliation, and injury. The defense was a general denial, and an averment that the language used in the article had no reference to the plaintiff and was so understood by persons reading it; and that there were other persons living in that community where the paper was circulated named Minnie Hatfield. It was admitted that the circulation of the newspaper on the morning in question was between seven and eight thousand, and there is no claim that the charge mentioned in the article as against plaintiff was true. It appears that one of the parties arrested was named Minnie Olson; that the defendant's reporter had a conversation with the sheriff who made the raid preparatory to the writing of the item for the paper; that he failed to ascertain the names of the parties involved; and, through mistake, wrote the name of Minnie Hatfield instead of Minnie Olson. Plaintiff's attorney was informed by defendant's manager that an apology would be printed and the article republished with the name corrected. The article was again published with the change of names, but no explanation nor apology accompanied it. It does not appear that there was any other person in the community by the name of Minnie Hatfield, nor that the reporter made any effort to verify the names of the parties arrested by looking up the court record. Plaintiff asked for a peremptory instruction, and it was refused. Verdict and judgment were in favor of the defendant, and the plaintiff appeals.

The publication in plain terms specifically charged the plaintiff, a single woman of unquestioned character and reputation, with unchastity and immorality. As the imputation was untrue, malice is inferred, and of itself it constitutes a libel. (*Cooper v. Seaverns,* 81 Kan. 267, 105 Pac. 509.) The only excuse is that a mistake was made in the use of plaintiff's name, the writer saying that he did not know the plaintiff and had no intention to hurt her, and also that he did not know how he came to use her name. This is not a valid excuse.

The imputation against the plaintiff was just as hurtful as if the writer had been acquainted with the plaintiff and had intentionally applied the charge to her. The law looks to the tendency and consequences of a publication rather than to the intention of the publisher. It is generally said that malice is a necessary element in libel, but that element is present where the publication of a false charge is made without a legal excuse. When the falsity of the charge was conceded, malice was established. There is no excuse for a false charge of unchastity and immorality which would be understood by reasonable people to refer to plaintiff, and especially where, as here, there is a lack of care and diligence on the part of the publisher to ascertain the real facts before the publication is made. One who makes an untrue charge of the kind in question, whether it is done recklessly or with care, does so at his peril and takes the risk of liability for resulting injury. It has been held that "it is not a legal excuse that defamatory matter was published accidentally or inadvertently, or with good motives and in an honest belief in its truth." (*Moore v. Francis et al.*, 121 N. Y. 199, 207.) It has also been held that—

"Publication of the portrait of one person with statements thereunder as of another, by mistake, and without knowledge of whom the portrait really is, is not an excuse. A libel is harmful on its face, and one publishing manifestly hurtful statements concerning an individual does so at his peril; and, if there is no justification other than that it was news or advertising, he is liable if the statements are false or are true only of some one else." (*Peck v. Tribune Co.*, 214 U. S. 185, syl. ¶ 2.)

It is generally held that an honest mistake in identity is no defense to an action for libel, although it may be admissible in mitigation of damages. (*Dunlevy v. Wolferman*, 106 Mo. App. 46; *Jones v. Murray*, 167 Mo. 25; *Greer v. White*, 90 Ark. 117; See, also, *Farley v. Publishing Co.*, 113 Mo. App. 216; *Wandt v. Hearst's Chicago American*, 129 Wis. 419; Note, 47 L. R. A., n. s., 240.)

The defendant relies on section 126 of the civil code, which provides:

"In an action for libel or slander, it shall be sufficient to state, generally, that the defamatory matter was published or spoken of the plaintiff; and if the allegation be denied, the plaintiff must prove, on the trial, the

facts, showing that the defamatory matter was published or spoken of him." (Gen. Stat. 1915, § 7018.)

It is contended that plaintiff failed to comply with the requirements of this section, in that she did not prove that the publication related to her or that persons reading it would understand it had reference to her. The statute does not change the general rule that has been stated. The provisions apply to cases where there is indefiniteness as to persons defamed. The legislative purpose manifestly was to avoid setting forth at length the extrinsic facts tending to show that plaintiff was the one referred to and making sufficient a general averment that the defamatory words were spoken or published of the plaintiff. In such a case, if the general averment is denied, it devolves upon the plaintiff to prove it as fully as if the extrinsic facts and circumstances pointing to the plaintiff had been alleged, and probably this much would have been required if no provision had been made as to the proof. Here there is no indefiniteness. The reference to the plaintiff by name was specific; plaintiff was the only Minnie Hatfield in the city; all who knew her would reasonably infer that she was the person against whom the charge was directed; the defamatory words are actionable *per se;* and no other proof was necessary as to the object of the libel, nor as to the injury to the plaintiff by reason of the publication.

So far as the damages are concerned, general damages from such a publication arise by inference of law and need not be proved. (Odgers on Libel and Slander, 5th ed., p. 372.) In view of the fact that no valid defense was made and that the proof showed without dispute that there was no legal excuse for the libel, only a question of law was presented, and the court should have instructed the jury that the only question for its determination was the amount of damages sustained by the plaintiff. Instead of that, the court appears to have submitted to the jury the question whether the publication referred to the plaintiff or to some other person, and instructed them that, unless it was shown that the publication was made of and concerning her and was false, a verdict must be returned for the defendant.

There is a suggestion that a settlement was made, based on the fact that the attorney of the plaintiff asked the defendant

for a retraction and an apology, which were promised to be made, and that subsequently the article was republished substituting the name of Minnie Olson for that of the plaintiff in the article, but making no other change nor explanation. No retraction or apology was published, but even if it had been, the arrangement made would not have amounted to a settlement.

The judgment is reversed and the cause remanded for trial as to the amount of the damages to which plaintiff is entitled.