No. 53,852

Gary Dean Gobin, *Appellee,* v. Globe Publishing Co.,
A Corporation, *Appellant.*

(649 P.2d 1239)

Opinion filed August 31, 1982.

*Gerrit H. Wormhoudt,* of Wichita, argued the cause, and *Harry A. Waite,* of Dodge City, was with him on the brief for appellant.

*Donald E. Shultz,* of Shultz, Shultz & Tedford, P.A., of Dodge City, argued the cause and was on the brief for appellee.

The opinion of the court was delivered by

Miller, J.: This is a libel action brought by Gary Dean Gobin

against the Globe Publishing Company, publisher of the Dodge City Daily Globe, arising out of a report of court proceedings published in the Daily Globe on July 8, 1972. The case has previously been before this court twice. See *Gobin v. Globe Publishing Co.* (*Gobin I*), 216 Kan. 223, 531 P.2d 76 (1975), and *Gobin v. Globe Publishing Co.* (*Gobin II*), 229 Kan. 1, 620 P.2d 1163 (1980).

Plaintiff's petition alleges that the defendant's publication of a news story that he pled guilty to a charge of cruelty to animals was false, libelous and defamatory to him, and was published maliciously and in reckless disregard of his rights and reputation. The trial court initially sustained the publisher's motion for summary judgment, holding that the publication was privileged. In *Gobin I*, we discussed our earlier cases and the recent opinions of the United States Supreme Court, particularly *Gertz v. Robert Welch, Inc.*, 418 U.S. 323, 41 L.Ed.2d 789, 94 S.Ct. 2997 (1974); *Curtis Publishing Co. v. Butts*, 388 U.S. 130, 18 L.Ed.2d 1094, 87 S.Ct. 1975, *reh. denied* 389 U.S. 889 (1967); and *New York Times Co. v. Sullivan*, 376 U.S. 254, 11 L.Ed.2d 686, 84 S.Ct. 710 (1964). In summarizing *Gertz*, we said:

"These rules were announced: A publisher or broadcaster of defamatory false-hoods about an individual who is neither a public official nor a public figure may not claim the *New York Times* protection against liability for defamation on the ground the defamatory statements concern an issue of public or general interest; so long as they do not impose liability without fault, the states may define for themselves the appropriate standard of liability for a publisher or broadcaster of defamatory falsehood which injures a private individual and whose substance makes substantial danger to reputation apparent; the states, however, may not permit recovery of presumed or punitive damages when liability is not based on knowledge of falsity or reckless disregard for the truth, and the private defamation plaintiff who establishes liability under a less demanding standard than the *New York Times* test may recover compensation only for actual injury.

"Thus, under *Gertz*, our old rule of strict liability applicable to reporting judicial proceedings which permitted recovery on no more proof than that the report was inaccurate, expressed in *Stone v. Hutchinson Daily News*, [125 Kan. 715, 266 Pac. 78 (1928)], is no longer constitutionally valid . . . ." 216 Kan. at 231.

## We announced our rule as follows:

"Our holding then is, in reporting judicial proceedings *a publisher* or broadcaster of defamatory falsehoods about an individual who is neither a public official nor a public figure *is liable in damages for actual injury to the individual when the assertion of the falsehood is the result of* the publisher's or broadcaster's *negli-*

*gence and when the substance of the assertion makes substantial danger to reputation apparent;* the standard to be applied in determining such negligence is the conduct of the reasonably careful publisher or broadcaster in the community or in similar communities under the existing circumstances; further, *when liability for defamation is based solely upon negligence the plaintiff may not recover presumed or punitive damages.*

"Under these rules, since appellant was neither public official nor voluntary public figure and the publication was one the substance of which made substantial danger to reputation apparent, rendition of summary judgment was premature and remand must be ordered to make the relevant inquiry whether appellee Globe negligently published the false statement." (Emphasis supplied.) 216 Kan. at 233.

We concluded that the publication was not privileged. Under the rules stated, we reversed and remanded for further proceedings.

The action was then tried to a jury and judgment resulted in favor of the plaintiff and against Globe for $38,500. The trial court instructed the jury that the story printed in the Globe was false. The only issues submitted to the jury were those of the Globe's negligence and the amount of damages. In *Gobin II,* we again reversed, holding that the trial court erred in determining as a matter of law that the news story was false.

Also, in *Gobin II,* we were called upon to determine the propriety of the trial court's entry of an order in limine, by which evidence of Gobin's "involvement" in other criminal proceedings was excluded. We concluded that the trial court was correct in rejecting evidence of certain specific court actions, but that the effect of such actions upon Gobin's reputation was admissible. We said:

"The plaintiff's *reputation* is necessarily involved in a libel action, and it is the general rule that evidence of reputation is admissible in such a proceeding.

. . . .

"It is damage to one's reputation in the community for which redress is sought in libel or slander actions. Reputation is what others say or think about a person, one's good or bad name in the community.

"[C]haracter witnesses are persons who portend to know what is said of another, what one's reputation is among his friends, neighbors, and associates. Such persons could be expected to know of one's brushes with the law and the effect, if any, of such instances upon one's reputation. We conclude that Gobin's conduct on the occasion of his arrests, and the fact of his trials, the extent of knowledge thereof, and their effect, if any, upon his reputation, is admissible either in direct or cross-examination of character witnesses." 229 Kan. at 5-6.

We remanded for a new trial. The case has now been tried a second time; a judgment in the amount of $100,000 in favor of the

plaintiff has been entered upon the jury's verdict. The Globe's motion for judgment non obstante verdicto or in the alternative for a new trial was argued and overruled. The defendant appeals.

A few days prior to the second trial, plaintiff again moved for an order in limine to prohibit the defendant from making any reference to or otherwise informing the jury of certain facts—a charge of negligent homicide, a charge of attempted theft of hogs, a charge by court-martial while plaintiff was in the military service, and a charge of conspiring to sell controlled substances—all brought against the plaintiff at various times, and an automobile collision case in which the plaintiff was involved. In arguing the motion, counsel for plaintiff agreed that there were three elements of damage listed in the pretrial order—damage to reputation, loss of income, and emotional distress. Counsel stated that plaintiff would no longer claim damage to reputation, and thus reputation would not be involved at trial. The trial judge sustained the motion and directed counsel for defendant not to refer to the factual items enumerated in the motion. Immediately before trial was to commence, counsel and the court discussed another civil action in which the plaintiff was involved. Plaintiff's counsel assured the court that plaintiff would make no claim for either damage to reputation or for loss of income. The trial court then included the additional civil action with those matters which defendant was precluded from mentioning in the presence of the jury. The only element of damages left in the case, and the one upon which evidence was presented and the case was submitted to the jury, was plaintiff's claim for damages for emotional distress. There was no evidence of malice, knowledge by defendant of falsity, or reckless disregard for the truth; the case was tried on the theory of simple negligence.

The controlling issue upon this appeal is whether damage to one's reputation is an essential ingredient in an action for defamation.

Prior to *Gertz*, Kansas followed the common law rule dividing libel into libel per se and libel per quod. Libel per se involved words from which malice was implied and damage was conclusively presumed to result. General damages from such a publication arose by inference of law and the plaintiff was not obliged to establish damage by proof. See *Koerner v. Lawler*, 180 Kan. 318, 304 P.2d 926 (1956); *Bennett v. Seimiller*, 175 Kan. 764, 267 P.2d

926 (1954); *Hatfield v. Printing Co.,* 103 Kan. 513, 175 Pac. 382 (1918), 3 A.L.R. 1276; and *Eckert v. VanPelt,* 69 Kan. 357, 76 Pac. 909 (1904). In *Bennett v. Seimiller,* Justice Wedell said:

"In actions involving libel or slander the temptation quite naturally exists to write a treatise on the subject. We shall attempt to hold that tendency within reasonable bounds. The term 'libel' is not defined by our civil code. (*Jerald v. Houston,* 124 Kan. 657, 662, 261 Pac. 851.) Neither is the term 'slander' defined. Reference, therefore, must be made to the common law to determine its meaning. Courts have defined actions involving slander into slander *per se* and slander *per quod.* In actions based on libel or slander *per se* no specific or special damages need be alleged or proved. The reason is that words libelous or slanderous *per se* are words which, intrinsically, without innuendo, import injury. They are words from which damage, by consent of men generally, flows as a natural consequence. From such words malice is implied and damages are conclusively presumed to result. It is for this reason that courts take judicial notice of damage resulting from libel or slander *per se.*" 175 Kan. at 766.

*Gertz,* as we pointed out in *Gobin I,* effected an immediate change upon the rule in Kansas and in those other states which presumed damages upon the establishment of libel per se, and permitted recovery based upon that presumption. Damages recoverable for defamation may no longer be presumed; they must be established by proof, no matter what the character of the libel.

We shall attempt to resist the temptation, as Justice Wedell suggests, "within reasonable bounds." But in order to determine the issue before us, we must explore the definition of and the basis for defamation actions.

Prosser, in his Handbook of the Law of Torts (4th ed. 1971), says:

"Defamation is made up of the twin torts of libel and slander—the one being, in general, written, while the other in general is oral, with somewhat different rules applicable to each, as will be explained later. In either form, *defamation is an invasion of the interest in reputation and good name.* This is a 'relational' interest, since it involves the opinion which others in the community may have, or tend to have, of the plaintiff. Consequently, defamation requires that something be communicated to a third person that may affect that opinion. Derogatory words and insults directed to the plaintiff himself may afford ground for an action for the intentional infliction of mental suffering, but unless they are communicated to another the action cannot be one for defamation, no matter how harrowing they may be to the feelings. *Defamation is not concerned with the plaintiff's own humiliation, wrath or sorrow, except as an element of 'parasitic' damages attached* to an independent cause of action." p. 737. (Emphasis supplied.)

"While the general idea of defamation is sufficiently well understood, the courts have not been altogether in harmony in dealing with it, so that very often a particular rule or holding is peculiar to a small number of jurisdictions. A

defamatory communication usually has been defined as one which tends to hold the plaintiff up to hatred, contempt or ridicule, or to cause him to be shunned or avoided. This definition is certainly too narrow, since an imputation of insanity, or poverty, or an assertion that a woman has been raped, which would be likely to arouse only pity or sympathy in the minds of all decent people, have been held to be defamatory. *Defamation is rather that which tends to injure 'reputation' in the* popular sense; to diminish the esteem, respect, goodwill or confidence in which the plaintiff is held, or to excite adverse, derogatory or unpleasant feelings or opinions against him. It necessarily, however, involves the idea of disgrace . . . ." p. 739. (Emphasis supplied.)

"[O]nce the cause of action is established, either by the character of the defamation itself or by the proof of pecuniary loss, the bars are lowered, and *'general' damages may be recovered* for the injury to the plaintiff's reputation, his wounded feelings and humiliation, and resulting physical illness and pain, as well as estimated future damages of the same kind. In other words, *such damages are insufficient in themselves to make the slander actionable, but once the cause of action is made out without them, they may be tacked on as 'parasitic' to it."* p. 761. (Emphasis supplied.)

The Kansas cases generally agree with the elements of an action for defamation as given by Prosser. In *Gobin II,* as noted above, we said that it is damage to one's reputation in the community for which redress is sought in defamation actions. In *Froelich v. Adair,* 213 Kan. 357, 360, 516 P.2d 993 (1973), we distinguished the torts of invasion of privacy and defamation; we defined the latter as a "remedy for injury to plaintiff's reputation." In *Jerald v. Houston,* 124 Kan. 657, 660, 261 Pac. 851 (1927), a libel action, we said:

"The action is one for damages resulting from a tort. The protected interest is good reputation. The claimed invasion is publication of defamatory words. The invasion must cause damages."

And see Justice Burch's discussion of the value of a good reputation in the heralded libel case of *Coleman v. MacLennan,* 78 Kan. 711, 98 Pac. 281 (1908). See also *Buckwalter v. Gossow,* 75 Kan. 147, 88 Pac. 742 (1907).

We conclude that in this state, damage to one's reputation is the essence and gravamen of an action for defamation. Unless injury to reputation is shown, plaintiff has not established a valid claim for defamation, by either libel or slander, under our law. It is reputation which is defamed, reputation which is injured, reputation which is protected by the laws of libel and slander.

We are aware that the State of Florida has permitted the recovery of damages for mental anguish in a "defamation" action,

without a showing of damage to reputation. *Time, Inc. v. Firestone*, 424 U.S. 448, 47 L.Ed.2d 154, 96 S.Ct. 958 (1976). The case has been soundly criticized. See Eaton, *The American Law of Defamation Through Gertz v. Robert Welch, Inc. and Beyond: An Analytical Primer*, 61 Va. L. Rev. 1349-1439 (1975). New York has reached exactly the opposite conclusion: Absent proof of harm to reputation, a plaintiff may not recover damages for mental anguish on a claim of defamation unless plaintiff proves malice. *France v. St. Clare's Hospital & Health Center*, 82 App. Div. 2d 1, 441 N.Y.S.2d 79 (1981); and see *Salomone v. MacMillan Pub. Co., Inc.*, 77 App. Div. 2d 501, 429 N.Y.S.2d 441 (1980). We need not encumber our reports with lengthy quotations from these cases; the opinions are available to the interested reader. We agree with the New York rule that the plaintiff in an action for defamation must first offer proof of harm to reputation; any claim for mental anguish is "parasitic," and compensable only after damage to reputation has been established.

During the trial of the action below, plaintiff offered no evidence of harm to his reputation, no evidence of damage by reason of injury to his reputation, no proof of financial loss flowing therefrom. He cannot recover in a defamation action for mental anguish in the absence of proof of the principal injury with which a defamation action is concerned—injury to reputation. By the gambit followed here, plaintiff was able to claim and be awarded substantial damages for claimed harm to his innermost feelings, all the while preventing the jury from hearing and determining what his true reputation was in the community of his residence, and from determining whether the publication complained of damaged that reputation in the least. Defamation actions in Kansas are primarily concerned with injury to reputation, not injury to one's personal sensitivities. Injuries to the latter alone cannot support a claim for defamation.

We conclude that the trial court erred in failing to sustain defendant's motion for judgment notwithstanding the verdict. In view of this holding, other issues raised in the briefs need not be determined.

The judgment is reversed.

SCHROEDER, C.J., dissenting: The issue squarely presented by this case is seldom presented to an appellate court in a libel

action, that is, where a plaintiff has sustained his burden of proof to show pecuniary damages as a result of the libelous publication, but *sought no recovery for damage to reputation.*

It is generally said in decisions on libel and slander that defamation is an invasion of the interest in reputation and good name, but the issue here was not presented in the great mass of cases written on the subject.

Prior to *Gertz v. Robert Welch, Inc.,* 418 U.S. 323, 41 L.Ed.2d 789, 94 S.Ct. 2997 (1974), our court and many other state courts recognized libel per se. This involved words from which malice was implied and damage was conclusively presumed to result. Under that rule even a prostitute could recover damages for libel whether her reputation and good name was actually damaged or not. The plaintiff was not required to establish damage by proof.

One must ask what can be the pecuniary damage to a hog farmer's reputation when he is libeled by a publication, which prior to *Gertz* was a libel per se.

Reputation is nothing more than mass hearsay, and the court has taken the position that the $100,000 proven pecuniary damages to the plaintiff, established to the satisfaction of the jury, must "piggy back" on damages to mass hearsay. The text writer would say:

> "Defamation is not concerned with the plaintiff's own humiliation, wrath or sorrow, except as an element of 'parasitic' damages attached to an independent cause of action." Prosser, The Law of Torts, p. 737 (4th ed. 1971).

The general rule on damages is that mental pain and suffering in connection with a wrong which, apart from such pain and suffering, constitutes a cause of action is a proper element of damages where it is the natural and proximate consequence of the wrong. 25 C.J.S., Damages § 63.

In this case Gobin, the plaintiff hog farmer, sought no pecuniary damages to reputation at his last trial in the district court. This situation did not arise until shortly before the hearing in the trial court now on review. In *Gobin v. Globe Publishing Co.,* 216 Kan. 223, 531 P.2d 76 (1975) (*Gobin I*) and *Gobin v. Globe Publishing Co.,* 229 Kan. 1, 620 P.2d 1163 (1980) (*Gobin II*), the issue of damages to reputation was pled and was a viable issue in the case. Language in *Gobin I* and *Gobin II,* therefore, is not authority for the court's decision herein.

*Time, Inc. v. Firestone,* 424 U.S. 448, 47 L.Ed.2d 154, 96 S.Ct.

958 (1976), on certiorari from the Florida Supreme Court (*Firestone v. Time, Inc.*, 305 So. 2d 172 [Fla. 1974]) clearly establishes that *Gertz* does not command the decision our court is making herein. In the opinion the United States Supreme Court said:

"We believe there is ample support for the jury's conclusion, affirmed by the Supreme Court of Florida, that this was not the case. There was, therefore, sufficient basis for imposing liability upon petitioner if the constitutional limitations we announced in *Gertz* have been satisfied. These are a prohibition against imposing liability without fault, 418 U.S., at 347, and the requirement that compensatory awards 'be supported by competent evidence concerning the injury.' *Id.,* at 350.

"As to the latter requirement little difficulty appears. Petitioner has argued that because respondent withdrew her claim for damages to reputation on the eve of trial, there could be no recovery consistent with *Gertz.* Petitioner's theory seems to be that the only compensable injury in a defamation action is that which may be done to one's reputation, and that claims not predicated upon such injury are by definition not actions for defamation. But Florida has obviously decided to permit recovery for other injuries without regard to measuring the effect the falsehood may have had upon a plaintiff's reputation. This does not transform the action into something other than an action for defamation as that term is meant in *Gertz.* In that opinion we made it clear that States could base awards on elements other than injury to reputation, specifically listing 'personal humiliation, and mental anguish and suffering' as examples of injuries which might be compensated consistently with the Constitution upon a showing of fault. Because respondent has decided to forgo recovery for injury to her reputation, she is not prevented from obtaining compensation for such other damages that a defamatory falsehood may have caused her.

"The trial court charged, consistently with *Gertz,* that the jury should award respondent compensatory damages in 'an amount of money that will fairly and adequately compensate her for such damages,' and further cautioned that '[i]t is only damages which are a direct and natural result of the alleged libel which may be recovered.' App. 509. There was competent evidence introduced to permit the jury to assess the amount of injury. Several witnesses testified to the extent of respondent's anxiety and concern over Time's inaccurately reporting that she had been found guilty of adultery, and she herself took the stand to elaborate on her fears that her young son would be adversely affected by this falsehood when he grew older. The jury decided these injuries should be compensated by an award of $100,000. We have no warrant for re-examining this determination. Cf. *Lincoln v. Power,* 151 U.S. 436 (1894)." 424 U.S. at 459-61.

The Florida Supreme Court is not the only court which has taken the position that actual damages in a libel action need not be parasitic to actual damage to reputation. In *Freeman v. Cooper,* 390 So. 2d 1355 (La. App. 1980), an attorney sued for libel and failed to show his professional reputation had been injured. The Court of Appeal of Louisiana held mental suffering

alone, or only injured feelings which must inevitably be inferred from libelous statements, can be made the basis of a damage award.

The law adopted by the court in this case is discriminatory in that it does not protect persons libeled whose reputation cannot be damaged.

It is respectfully submitted the judgment of the lower court should be affirmed on the point covered by the Court's opinion.