Clarence **WALKER, et al., Plaintiffs,**

v.

Don **COUTURE, Defendant.**

**Civ. A. No. 89–1450–T.**

United States District Court, D. Kansas.

Oct. 2, 1992.

Jim Lawing, Wichita, Kan., for plaintiffs.

Danny D. Boyer, Sweet & Boyer, Salina, Kan., Martin R. Ufford, Redmond, Redmond & Nazar, Wichita, Kan., for defendant.

## MEMORANDUM AND ORDER

THEIS, District Judge.

Plaintiffs brought this action against Don Couture alleging violation of civil

rights under 42 U.S.C. § 1981. Plaintiffs also bring a state law claim for libel. This matter was tried to the court on August 17 and 18, 1992. The court heard the testimony of a number of witnesses and had the opportunity to evaluate their demeanor and credibility. The parties have now filed their post-trial briefs. After considering the evidence presented and the arguments of the parties, the court now issues the following findings of fact and conclusions of law.

### FINDINGS OF FACT

Plaintiff Clarence Walker is an African–American. Plaintiff Esther Walker is Caucasian. Clarence and Esther Walker are husband and wife. Plaintiffs Travis Walker and Bettina Walker Okoro are the natural children of Clarence and Esther Walker. Travis was fifteen and Bettina was seventeen at the time of the events giving rise to this lawsuit. Plaintiff Marthina Ravon Walker was living with Clarence and Esther Walker at the time of the relevant events. She has since been adopted by Clarence and Esther Walker. Marthina is African–American and was eleven years old at the relevant time.

Plaintiffs reside in El Dorado, Kansas. Plaintiffs belong to a camping resort in Oklahoma known as the Pine Island Resort. Plaintiffs are also members of a nationwide camping organization known as Camp Coast to Coast. Membership in Camp Coast to Coast authorizes them to camp at other Camp Coast to Coast resorts for a nominal fee.

The plaintiffs made reservations to camp at the Crescent Lake camping facility near Abilene in Dickinson County, Kansas from May 24, 1989 through May 28, 1989. This was Memorial Day weekend.

The defendant Don Couture was the manager of the Crescent Lake facility at the relevant times. Couture is Caucasian.

The plaintiffs invited two friends of Travis Walker's along on the camping trip. Ray Bennett and Wes Stewart are both Caucasian. They were both fifteen years old at the relevant time.

The plaintiffs reserved an RV campsite prior to their arrival at the campground. *See* Plaintiffs' Exhs. 1–5; Defendant's Exh. D. Plaintiffs arrived on May 24, 1989, stayed five nights, and left the campground on Memorial Day, May 29, 1989.

Since plaintiffs were members of Camp Coast to Coast, the charge for camping at Crescent Lake was one dollar ($1) per night.

Plaintiffs arrived at Crescent Lake on May 24, 1989, in two vehicles, a camper and a van.

Since there were so many in their party, the plaintiffs inquired at the camp entrance about renting a small cabin (called a "hobo") for the three teenage boys.

The guard on duty at the camp entrance agreed to rent a hobo to the Walker party. Clarence Walker paid the fee for the hobo ($25.32) and was given a receipt. Plaintiffs' Exh. 6.

At about this time, the defendant Don Couture arrived at the guard shack at the camp entrance. Couture inquired as to whether there was a problem. When Couture was informed that the plaintiffs had rented a hobo, Couture ordered the guard to refund the Walkers' money. Couture did not explain why, but merely told the guard that the Walkers could not have the hobo.

The plaintiffs camped at the RV campsite during the course of their stay. The three teenage boys slept in the van, while the rest of the family slept in the camper.

On May 30, 1989, the day after the Walker party left Crescent Lake, the defendant wrote the following letter to Clarence Walker:

As a Coast to Coast camper from 5–24–89 through 5–28–89 at Crescent Lake, you are responsible for leaving a clean campsite at the end of your stay. Your campsite #78 was left in an appalling manner, of which I am sure you are aware (ie. sewer drainage on campsite, broken sewer drop, used condoms thrown on campsite and trees, etc.). Accordingly, a charge of $50.00 is due for the clean-up and repairs needed of your

campsite. This charge is due upon receipt of this letter.

Because of numerous complaints throughout your stay at Crescent Lake (ie. children skateboarding in the pool, using ping pong table as a skateboard ramp in the rec hall, unauthorized use of boat on the lake by the children, unsupervised use of the hot tub by the children, mess in pool restroom, children roaming the park in the middle of the night—2:00 am, watermelon rinds scattered on the campsite, etc.), and the manner in which you left your campsite, I have informed the Security Office to refuse admittance to our park in the future.

Plaintiffs' Exh. 7. Copies of this letter were sent to Camp Coast to Coast and to the plaintiffs' home resort, Pine Island.

Also on May 30, 1989, defendant wrote the following letter to Camp Coast to Coast:

Please find the enclosed letter to Coast to Coast member Mr. Clarence Walker, # 549164. Mr. Walker and his family stayed at our park from 5–24–89 through 5–28–89. We received a number of complaints concerning Mr. Walker and his family throughout their stay. An example of the complaints follow:

1. Children skateboarding in the pool (before it was filled).

2. Children were using the ping pong table in the rec hall as a skateboard ramp.

3. Unauthorized use of boat on the lake by the children—no oars or life vests were checked out.

4. Unsupervised use of the hot tub by children.

5. Mess made in the pool restroom during the night.

6. Children roaming the park in the middle of the night—approx. 2:00 a.m.

7. Use of foul language by the children.

8. Watermelon rinds scattered on the campsite.

9. Campsite was left in an appalling manner upon departure—sewer drainage on campsite, broken sewer drop, used condoms thrown on campsite and trees.

I spoke with Mr. Walker a number of times throughout his stay concerning these complaints, but the complaints kept coming in. Accordingly, I have suspended them from further use of our park as a Coast to Coast member. I would urge some kind of corrective measure on your part to ensure that this type of disregard for Coast to Coast policies does not take place at other campgrounds.

Plaintiffs' Exh. 8. Copies of this letter were sent to Clarence Walker and to Pine Island Resort.

At trial, Ray Bennett denied that the boys skated in the empty swimming pool. Maintenance worker Larry Irvine testified, however, that he saw the three boys skating in the empty swimming pool. Security guard Mary Reaka observed three young men with skateboards in the pool area and overheard them swearing. Defendant testified that his personnel reported to him that the children were skateboarding in the pool. Defendant did not, however, observe this himself.

Marthina Walker saw the boys skateboarding on the concrete rec hall floor. Ray Bennett admitted that they were skateboarding in the rec room and that Travis Walker used a ping pong table as a skating ramp. Travis Walker admitted to skateboarding inside the rec room and using the table as a ramp. Security guard Robert Rutz testified that he told two or three young men not to skateboard in the rec hall. The defendant was informed by his security people that the boys were using the table as a skateboard ramp.

Ray Bennett and Travis Walker admitted that they had taken the boat out onto the lake without checking it out. Security guard Mary Reaka observed the three boys take the boat without checking it out. The defendant had personal knowledge of this event, since Reaka asked the defendant's assistance in bringing the boys back to shore with the boat.

The children admitted to using the hot tub without adult supervision. Bettina Walker testified that all five children used

the hot tub without the supervision of Mr. or Mrs. Walker, most likely on the night of their arrival at Crescent Lake. Marthina, Travis and Ray also admitted to using the hot tub. The defendant was informed of this matter by his security guards.

A security guard reported to the defendant that the children had left a mess in the pool restroom.

The three boys did wander the park in the middle of the night. Travis Walker testified that one night around 2:00 a.m., the three boys went to get a soda and to use the telephone to call their girlfriends back in El Dorado. Travis testified that they were away from the campsite approximately 30 minutes. A security guard informed the defendant of this event.

Ray Bennett and Travis Walker admitted that the three boys used foul language among themselves. Marthina Walker heard the three teenage boys using foul language on one occasion. The defendant received complaints from campers and personally heard the boys using foul language at the lake.

Plaintiffs deny leaving any watermelon rinds on the campsite. Plaintiffs did admit that Wes Stewart (the only one of the campers who did not testify) had a watermelon and that some of them ate watermelon during their stay. Ray Bennett testified that Wes purchased a watermelon during the trip and that everyone in the party ate watermelon. Ray further testified that after eating watermelon, some of the party threw the rinds into the trees behind the campsite. Ray testified, however, that Clarence Walker found the rinds and made the boys pick them up. The defendant testified, however, that he personally saw the rinds which were left at the site. Other disinterested witnesses corroborated that watermelon rinds were left at the campsite.

Ray Bennett and Travis Walker admitted that someone had condoms on the trip. Ray Bennett testified that someone, probably Wes Stewart, had taken some condoms on the trip. Ray denied that he possessed any condoms or that he used any condoms himself. Ray further denied seeing any condoms scattered at the campsite. Travis Walker likewise testified that Wes Stewart brought some condoms. Travis denied throwing the condoms around the campsite. Travis further testified that Wes was "playing" with the condoms, opening the packages and looking at them. Clarence Walker testified that one morning he found condoms on the campsite, hanging in a tree, laying on the ground, and in the barbecue pit. Clarence Walker pointed the last one out to his wife before he picked them up and threw them away. Esther Walker testified that she found some condoms on the campsite, but that she did not know who put them there.

Plaintiffs generally deny leaving any mess behind. Plaintiffs testified that they cleaned up the site before they left and that Clarence Walker made Travis get out of the vehicle and pick up a can as they were leaving the campsite. Bettina testified that the campsite was clean when they left it. However, the defendant personally saw the condition of the campsite after the plaintiffs left. Several disinterested witnesses also testified that the campsite was left in poor condition.

Defendant never spoke to Esther Walker about the behavior of the children. Defendant spoke to Clarence Walker once, on Saturday morning, May 27, 1989. Clarence Walker had walked over to speak to the defendant. Defendant then told Clarence Walker that there had been complaints about profanity and to advise the children to watch their language. Clarence Walker stated that he would talk to the children. This was the only conversation the defendant had with Clarence Walker regarding complaints. The other complaints were never brought to the Walkers' attention. The defendant admitted that he only spoke with Clarence Walker once.

Marylin McCoy was camping at the campsite next to the Walkers over Memorial Day weekend. She testified that every morning she found several condoms strewn about near the campsite. She testified that she carefully picked them up and disposed of them, except for one morning when she put the condoms on the Walkers' campsite.

McCoy was present at the campsite when the Walkers left. She testified that she saw condoms left on the bushes, watermelon rinds at the back of the campsite, and raw sewage near the sewer pipe at the Walkers' campsite. McCoy testified that the sewer drainage may have been an accident, if someone flushed the camper toilet after the sewer line was disconnected. McCoy's husband complained to the defendant about the mess.

Robert McCall was camping at the campsite next to the McCoys over the Memorial Day weekend. McCall testified that he saw condoms out behind the Walker's camper in the hedgerow. McCall further testified that he say Marylin McCoy pick up one condom and place it on the Walker's grill.

Larry Irvine was a maintenance worker at Crescent Lake in 1989. He was called to clean up the Walker's campsite after they had left it. He testified that he found debris, including condoms, on the campsite and that the sewer drain pipe was plugged. Irvine testified that the sewer pipe was in good shape the morning the Walkers arrived at the campground. After the Walkers left, Irvine had to dig up the sewer line. The cap from the end of the pipe had been shoved inside the sewer pipe, plugging the sewer line and holding back the raw sewage.

Security guard Mary Reaka testified that she accompanied Irvine to the Walkers' campsite. Reaka testified that the campsite was a mess, with trash, toilet paper, food, and used condoms on the site.

Reaka testified that she had received several complaints about the family from other members camping nearby.

The defendant received complaints about the plaintiffs from local members, Camp Coast to Coast members, and the staff. After defendant spoke with Clarence Walker about the profanity, the complaints about profanity ceased.

After the Walkers checked out on Monday, May 29, defendant was called to the campsite by security. The defendant personally observed raw sewage, watermelon rinds and condoms on the site. The defendant observed that the sewage dump pipe was split and appeared to have been run over. The defendant assisted Larry Irvine with digging up and replacing the sewer pipe.

At trial, the Walker children and Ray Bennett admitted virtually all of the matters about which defendant complained in his May 30, 1989 letter to Camp Coast to Coast.

The court finds that it is more likely true than not true that the three teenage boys were responsible for throwing the condoms around the campsite.

The court further finds as a fact that the Walkers left trash behind at the campsite. Additionally, the Walkers most likely hooked up the camper's sewer line without removing the cap from the sewer drain pipe, thereby accidentally plugging the sewer drain and allowing sewage to drain on the campsite.

Camp Coast to Coast publishes a directory for its members which lists all affiliated campgrounds and various rules and regulations. Defendant's Exh. A. The plaintiffs received a copy of the directory in 1989. The Coast to Coast directory specifies that on major holiday weekends, accommodations at Coast to Coast resorts are usually reserved for home resort members. Memorial Day weekend is one of the listed holiday weekends. Defendant's Exh. A, p. 5, ¶ 4. As a part of the courtesy code for Coast to Coast members, the directory advises campers to follow all host resort rules, even if they differ from the rules of the home resort. Defendant's Exh. A, p. 6, ¶ 3.

The rules of the Crescent Lake resort, as posted in the guard shack at the entrance to the facility, provide in relevant part: "NO RENTAL UNITS WILL BE RENTED TO GUESTS OR CCC [Camp Coast to Coast members] ON HOLIDAY WEEKENDS IN ORDER TO KEEP THEM FOR OUR LOCAL MEMBERS [sic] USAGE." Defendant's Exh. B. These rules were posted at the guard shack at the time of the plaintiffs' arrival at Crescent Lake.

Security guard Robert Rutz testified that Crescent Lake's rules and regulations, including the limitation on rental units for local members only, were posted on the wall of the security guard shack, where campers checked in. Security guard Mary Reaka also testified that the rules and regulations were posted at the guard shack.

Defendant testified that Crescent Lake's rules and regulations restricted the availability of rental units to local members on Memorial Day, Fourth of July and Labor Day holidays. The written rules and regulations, Defendant's Exh. B, were posted at the guard shack since 1985. Defendant testified that the rental units were restricted on those holidays because those were the busiest times of year.

From April 1988, when he became manager of Crescent Lake, the defendant never allowed the rental units (which previously included trailers as well as cabins) to be rented by guests of local members or by non-local Camp Coast to Coast members on the three major holidays (Memorial Day, Fourth of July, and Labor Day).

The plaintiffs telephoned Crescent Lake to reserve the campsite for Memorial Day weekend. Defendant personally took the call from Clarence Walker. Walker did not discuss renting a hobo cabin at that time.

Defendant observed the plaintiffs arrive at the campground. Defendant observed that Mr. Walker was in the guard shack for a long time. The defendant thought the check-in process was taking too long, so he went down to the guard shack to check it out.

When defendant arrived at the guard shack, the security guard was writing out a receipt for rental of one of the hobo cabins. The defendant informed the guard that the Walkers could not rent a cabin. Defendant asserts that he explained that the reason was because the Walkers were not local members. The plaintiffs deny that any reason was ever given to them.

Defendant testified that he was not angry at the plaintiffs, but he was angry at the security guard for renting the hobo cabin to nonmembers in violation of the rules.

Esther Walker testified that she got angry when the defendant came over and asked what the problem was when the plaintiffs were paying for their campsite and the hobo unit. Clarence Walker testified that he immediately thought that the defendant was a racist since no problem existed when the defendant came up to the guard shack to inquire about the nature of the problem.

Defendant failed to inform plaintiffs of the reason for his refusal to rent them a hobo unit. However, after considering the defendant's testimony and his credibility, the court finds that defendant was merely enforcing the rules of the resort. There was no objective evidence offered to show that the defendant acted out of racial animus. The undisputed testimony was that rental units were never rented to Camp Coast to Coast members on holiday weekends, even if there was no demand for the rental units on the part of the local members.

## CONCLUSIONS OF LAW

Plaintiffs bring a claim for violation of their civil rights, pursuant to 42 U.S.C. § 1981. Jurisdiction is conferred by 28 U.S.C. §§ 1343 and 1331. The court has personal jurisdiction of the parties. Venue is proper in this district. 28 U.S.C. § 1391(b). The plaintiffs' state law claim for libel is within this court's pendent jurisdiction.

■ The tort of defamation includes libel and slander. The elements of defamation include: (1) false and defamatory words; (2) communication to a third party; and (3) resulting harm to the reputation of the person defamed. *Batt v. Globe Engineering Co.*, 13 Kan.App.2d 500, 504, 774 P.2d 371, *rev. denied*, 245 Kan. 782 (1989).

■ Plaintiffs' claim for libel fails for two reasons: first, because the May 30, 1989 letter sent by defendant to Camp Coast to Coast was not false and defamatory; and second, because plaintiffs have failed to prove harm to their reputations.

■ "For there to be liability for defamation, there must be a publication of a matter that is both defamatory and false. In civil actions for libel where the defendant establishes the truth of the matter charged as defamatory, the defendant is justified in law, and exempt from all civil responsibility. Where the published statements are substantially true, there is no liability...." *Ruebke v. Globe Communications Corp.*, 241 Kan. 595, 598, 738 P.2d 1246 (1987) (citation omitted); *see also Redmond v. Sun Publishing Co.*, 239 Kan. 30, 37, 716 P.2d 168 (1986).

Plaintiffs failed to prove that the letter was false and defamatory. The claims in defendant's letter were substantially true. Only one claim in the letter was inaccurate. The defendant spoke to Mr. Walker only once, not a number of times throughout their stay, as the letter states. This statement, however, was not defamatory. The children admitted virtually all of the matters alleged in the letter. Overall, the claims contained in the letter were substantially true.

Kansas law once recognized the distinction between defamation per se and defamation per quod. Defamation per se involves words from which malice was implied and damage was conclusively presumed to result. General damages from publication arose by inference of law and the plaintiff was not required to establish damage by proof. *Gobin v. Globe Publishing Co.*, 232 Kan. 1, 4, 649 P.2d 1239 (1982).

Under common law, defamation per se was limited to four categories: imputation of a crime; imputation of a loathsome disease; words reflecting on the plaintiff's fitness for office, profession or trade; and the imputation of unchastity in a woman. *Bradshaw v. Swagerty*, 1 Kan.App.2d 213, 215, 563 P.2d 511 (1977). None of these categories of defamation per se apply to the facts of this case.

■ In *Gobin v. Globe Publishing Co.*, 232 Kan. 1, 649 P.2d 1239 (1982), the Kansas Supreme Court abolished the distinction between defamation per se and defamation per quod (at least for defendants who are members of the media), stating,

"Damages recoverable for defamation may no longer be presumed; they must be established by proof, no matter what the character of the libel." *Id.* at 5, 649 P.2d 1239 (citing *Gertz v. Robert Welch Inc.*, 418 U.S. 323, 94 S.Ct. 2997, 41 L.Ed.2d 789 (1974)). Damage to one's reputation is the essence and gravamen of an action for defamation. Unless injury to reputation is shown, the plaintiff has not established a claim for defamation. *Gobin*, 232 Kan. at 6, 649 P.2d 1239. A claim for mental anguish is "parasitic," and is compensable only after damage to reputation has been established. *Id.* at 7, 649 P.2d 1239.

The question of whether *Gobin* requires actual proof of damage to reputation when the defendant is not a member of the news media was left open in *Turner v. Halliburton Co.*, 240 Kan. 1, 11, 722 P.2d 1106 (1986). The Tenth Circuit, however, has applied the *Gobin* rule in a case involving a defendant who was not a member of the news media. *Polson v. Davis*, 895 F.2d 705 (10th Cir.1990).

The Kansas Supreme Court has recently reiterated that Kansas law no longer permits recovery based upon the establishment of defamation per se. *Knudsen v. Kansas Gas & Electric Co.*, 248 Kan. 469, 474, 807 P.2d 71 (1991).

The Kansas Court of Appeals has recently ruled that Kansas law no longer permits recovery based upon the establishment of defamation per se in a case involving private individuals. *Zoeller v. American Family Mutual Insurance Co.*, 17 Kan. App.2d 223, 834 P.2d 391 (1992). The court held that the rule enunciated in *Gobin* is not limited to situations involving a media defendant and a private individual. *Id.* syl. ¶ 3.

The plaintiffs attempted to prove a case of libel per se. The court concludes, however, that such a claim is no longer available under Kansas law. The plaintiffs presented no evidence regarding injury to their reputations from the allegedly false statements. Accordingly, their claim for damages for humiliation and personal anxiety must fail.

For their federal claim, plaintiffs claim that the defendant interfered with their right to make a contract to rent the hobo cabin because of the racial makeup of the family, in violation of 42 U.S.C. § 1981.

■ Section 1981 prohibits, when based on race, the refusal to enter into a contract with someone, as well as an offer to make a contract only on discriminatory terms. *Patterson v. McLean Credit Union,* 491 U.S. 164, 176, 109 S.Ct. 2363, 2372, 105 L.Ed.2d 132 (1989). To prevail under section 1981, a plaintiff must prove purposeful discrimination. *Id.* at 185, 109 S.Ct. at 2377. The *Burdine/McDonnell Douglas* scheme of proof developed in the Title VII context applies to claims of racial discrimination under section 1981. *Id.* at 185–87, 109 S.Ct. at 2377–78. The defendant concedes that this scheme of proof applies to the present case. *See* Doc. 45, Defendant's Proposed Findings of Fact and Conclusions of Law.

The plaintiff bears the initial burden of proving, by a preponderance of the evidence, a prima facie case of discrimination. Once the plaintiff establishes a prima facie case, an inference of discrimination arises. To rebut the inference, the defendant must present evidence that the plaintiff was rejected for a legitimate nondiscriminatory reason. Once the presumption of discrimination is rebutted, the plaintiff then has the opportunity to demonstrate that the defendant's proffered reasons for its decision were not its true reasons. The plaintiff retains the ultimate burden of persuasion on the issue of intentional discrimination. *Patterson,* at 187, 109 S.Ct. at 2378.

■ The plaintiffs established a prima facie case of discrimination. An inference of discrimination arises from the defendant's conduct in refusing to rent the plaintiffs the hobo cabin after the defendant's security guard had previously accepted the plaintiffs' money. It was natural and understandable for the plaintiffs to assume that they were being discriminated against on the basis of race in that situation.

The defendant came forth with evidence sufficient to rebut any inference that his actions were racially motivated. The defendant's testimony, which the court found credible, indicated that the plaintiffs were denied the use of the hobo cabin because Crescent Lake's rules required that the rental facilities be reserved for local members on that holiday weekend. The resort rules were posted at the entrance to the resort. Further, the 1989 Camp Coast to Coast directory contains a warning that campgrounds may not be available to Coast to Coast members during specified holiday weekends. Plaintiffs were aware of this rule. Couture was merely enforcing the rules.

Plaintiffs failed to demonstrate that defendant's proffered reason was not his true reason, i.e., that the proffered reason was pretextual. Couture uniformly enforced the rules restricting rental units to local members on holiday weekends. Plaintiffs presented no proof to the contrary, only their subjective belief that defendant's action was racially motivated. Plaintiffs failed in their ultimate burden of persuasion on the issue of intentional racial discrimination. Plaintiffs have failed to prove that the defendant's conduct was racially motivated.

IT IS BY THE COURT THEREFORE ORDERED that judgment be entered in favor of the defendant on all claims. Costs shall be assessed against plaintiffs.