0IN THE SUPREME COURT OF THE STATE OF KANSAS

No. 122,400

ELYSIA A. MARCUS,
*Appellee*,

v.

ERIC SWANSON, M.D.,
*Appellant*,

v.

ELYSIA A. MARCUS,
*Appellee*.

SYLLABUS BY THE COURT

1.

The elements of defamation include false and defamatory words, communicated to a third person, which result in harm to the reputation of the person defamed.

2.

Evidence of reputational harm is required in defamation claims. Speculation about reputational harm is not sufficient.

3.

Reputational harm may be shown by reasonable inferences, but these reasonable inferences must be tethered to a fact in the world, whether it be declining revenue, decreased professional opportunities, or some other indicator of reputational harm that is unique to the case at hand.

4.

Defamation per se and presumed damages have been abolished in state defamation causes of action in Kansas.

5.

Unless injury to reputation is established by the evidence in a defamation cause of action, no other damages are recoverable.

Review of the judgment of the Court of Appeals in an unpublished opinion filed August 19, 2022. Appeal from Johnson District Court; DAVID W. HAUBER, judge. Oral argument held March 29, 2023. Opinion filed December 8, 2023. Judgment of the Court of Appeals affirming the district court is affirmed. Judgment of the district court is affirmed.

*Quentin M. Templeton,* of Forbes Law Group, LLC, of Overland Park, argued the cause, and *Frankie J. Forbes* and *Russell J. Keller*, of the same firm,  and *William J. Skepnek*, of The Skepnek Law Firm, P.A., of Lawrence, were with him on the briefs for appellant.

*Matthew V. Bartle*, of Bartle & Marcus LLC, of Kansas City, Missouri, argued the cause and was on the briefs for appellee.

The opinion of the court was delivered by

WILSON, J.:  This is a defamation claim by a cosmetic surgeon against a former patient. The patient, Elysia A. Marcus, posted negative and false Yelp reviews after Dr. Eric Swanson performed a laser resurfacing procedure on her face. Finding in Swanson's favor, a jury determined the reviews harmed Swanson's reputation. The district court set aside the defamation judgment holding Swanson failed to show any actual damage to his reputation. A Court of Appeals panel majority affirmed the district court. We agree and affirm the panel majority and the district court.

FACTS AND PROCEDURAL BACKGROUND

Dr. Eric Swanson is a plastic surgeon specializing in cosmetic surgery. In April 2015, Elysia Marcus met with Swanson on the advice of a friend. In 2016, Swanson performed a cosmetic procedure on many areas of Marcus' face, at a cost of $2,500. Marcus was not satisfied with the results.

In May 2017, Marcus' husband, an attorney, reached out to another attorney who focused on medical negligence. This attorney sent Swanson a demand letter. After negotiations, the parties signed a written release with these provisions:  Swanson would refund the $2,500 fee, the Marcuses would give up any legal claims against Swanson or his practice related to the procedure, and the Marcuses would not discuss the issue in the media.

In November 2017, Marcus posted two Yelp reviews, one on Swanson's personal page and one on the page of his business, the Swanson Center. The business review included a one-star rating out of a possible five stars. The parties agree the reviews contained false and defamatory statements.

Swanson learned about the posts in March 2018. Due to the nature of his business, he relies on online advertising and word-of-mouth recommendations from previous clients. Swanson routinely tracks his online reviews. Though signed under a false name, Swanson suspected Marcus authored the defamatory reviews. He hired an attorney and sent a demand letter to the Marcuses. The letter demanded that Marcus (1) pay Swanson $25,000; (2) acknowledge that she wrote the reviews; (3) apologize; and (4) take down the reviews. The letter said Swanson would sue if Marcus failed to meet these demands.

3

Shortly after, Marcus petitioned for declaratory judgment in the District Court of Johnson County. She asked the district court to determine the parties' rights and obligations under the release. Swanson filed an answer and raised three counterclaims: (1) breach of contract, (2) libel, and particularly libel per se, and (3) tortious interference with a prospective business advantage. The third claim was later dismissed.

Three witnesses testified at trial: Marcus, Swanson, and Nicole Hart Neufeld, one of Swanson's former patients. Swanson explained that he believed the posts hurt his reputation, but that he did not lose any business or professional opportunities following the Yelp reviews and that he could not quantify how many potential clients were affected. Similarly, Neufeld testified that she saw the reviews and was concerned they might cause potential clients to avoid Swanson. She was a satisfied client and posted a review to offset Marcus'. She continued to recommend Swanson's services to her friends after reading the reviews.

Following the close of evidence, Marcus moved for judgment as a matter of law on both claims. As for defamation, Marcus' counsel argued "there's been literally zero evidence of any damages whatsoever." The court denied the motion as to the breach of contract claim but took the motion concerning the defamation claim under advisement and said Marcus could renew the motion after the verdict.

The jury found that Marcus breached the release agreement and awarded Swanson $2,500 in damages. Next, the jury concluded Marcus' Yelp reviews were defamatory, the reviews damaged Swanson's reputation, and Swanson should be awarded $15,000 in damages. The jury also found that punitive damages should be awarded after finding "Marcus acted in a willful or malicious manner."

4

Marcus filed a renewed motion for judgment as a matter of law. She argued there was no evidence the Yelp reviews injured Swanson's reputation. In December 2019, the court granted the motion and set aside the jury's verdict on the defamation claim. Swanson filed a notice of appeal and Marcus cross-appealed.

A panel of the Kansas Court of Appeals issued a split opinion in August 2022. *Marcus v. Swanson*, No. 122,400, 2022 WL 3570349 (Kan. App. 2022) (unpublished opinion). The majority affirmed on both counts.

The majority pointed out that Kansas law requires a "tangible basis for inferring a real (rather than merely a presumed) diminution in reputation." *Marcus*, 2022 WL 3570349, at *6. After reviewing the trial testimony, the majority concluded there was no evidence to suggest reputational harm. Instead, any such harm was merely speculative. It concluded "[t]he fundamental problem for Dr. Swanson rests in the requirement he offer evidence of *some* actual damage to his reputation to establish a legally submissible claim for defamation." 2022 WL 3570349, at *8.

In her concurring and dissenting opinion, Judge Warner outlined various pieces of testimony from Swanson and Neufeld. She found the testimony sufficient to support a jury's finding of reputational damage, but noted the "evidence, without more, may have danced on the razor's edge of speculation." Yet Judge Warner argued that Marcus affected "Swanson's reputation in a real, measurable sense: *It reduced Dr. Swanson's Yelp star-rating from 5 to 3.5 stars*." 2022 WL 3570349, at *15. Accordingly, Judge Warner concluded the district court erred in determining no evidence supported the jury's conclusion that the Yelp posts injured Swanson's reputation.

We granted Swanson's petition for review.

5

Swanson raises two issues in his petition for review. First, Swanson argues that the district court and panel majority erred in finding there was insufficient evidence to establish reputational harm. Second, Swanson argues that he need not establish reputational harm because the jury found Marcus acted with malice and the common law doctrine of defamation per se means damages are presumed.

*Defamation in Kansas*

The law of defamation developed as part of the common law. "The elements of defamation include false and defamatory words, communicated to a third person, which result in harm to the reputation of the person defamed." *Hall v. Kansas Farm Bureau*, 274 Kan. 263, 276, 50 P.3d 495 (2002). Traditionally, defamation has two variants: libel, a written defamatory statement, and slander, an oral defamatory statement. *Gobin v. Globe Pub. Co.*, 232 Kan. 1, 5, 649 P.2d 1239 (1982) (*Gobin III*). Rather than viewing these as distinct causes of action, in Kansas "'[t]he tort of defamation includes both libel and slander.'" *Dominguez v. Davidson*, 266 Kan. 926, 930, 974 P.2d 112 (1999) (quoting *Lindemuth v. Goodyear Tire & Rubber Co.*, 19 Kan. App. 2d 95, 102, 864 P.2d 744 [1993]).

Beyond the slander/libel distinction, the tort of defamation also traditionally included a distinction between defamation per se and defamation per quod. In *Karrigan v. Valentine*, 184 Kan. 783, 787, 339 P.2d 52 (1959), we explained:

> "Words libelous *per se* are words which are defamatory in themselves and which intrinsically, by their very use, without innuendo and the aid of extrinsic proof, import injury and damage to the person concerning whom they were written. They are words

from which, by the consent of mankind generally, damage follows as a natural consequence and from which malice is implied and damage is conclusively presumed to result. . . .

"Words libelous *per quod*, on the other hand, are words ordinarily not defamatory but which become actionable only when special damages are shown, that is, they are words the injurious character of which appears only in consequence of extrinsic facts. Thus, words not defamatory *per se*, may become actionable *per quod*, depending upon the facts and circumstances of the particular case, and this gives rise to the rule that in order to recover for a libel *per quod* special damage and injury must be alleged and proved."

In Kansas, defamation per se arose based on these statements: "(1) Imputation of a crime; (2) imputation of a loathsome disease (usually venereal); (3) imputation of a person's unfitness for his trade or profession; or (4) imputation that a woman is unchaste." *Kraisinger v. Liggett*, 3 Kan. App. 2d 235, 237, 592 P.2d 477 (1979).

Moreover, damages in defamation come in several forms.

"Defamation damages traditionally involve five subparts: (1) nominal damages ('a trivial sum of money awarded' when a plaintiff 'has not established that he is entitled to compensatory damages'), (2) general damages for harm to reputation (called 'general,' because they are generally anticipated, and hence do not need to be alleged), (3) damages for special harm (the 'loss of something having economic or pecuniary value,' such as loss of business), (4) damages for emotional distress (and bodily harm resulting therefrom), and (5) punitive damages (to punish a defendant's outrageous conduct)." Sipe, *"Old Stinking, Old Nasty, Old Itchy Old Toad": Defamation Law, Warts and All (a Call for Reform)*, 41 Ind. L. Rev. 137, 152 (2008).

But the right of an individual to seek and obtain redress for defamation is not without limits. See, e.g., *New York Times v. Sullivan*, 376 U.S. 254, 84 S. Ct. 710, 11 L.

Ed. 2d 686 (1964) (false statements from the media about a public official conducting their official duties were protected by the First Amendment unless the public official could prove the statement was made with actual malice); *Gertz v. Robert Welch Inc.*, 418 U.S. 323, 349, 94 S. Ct. 2997, 41 L. Ed. 2d 789 (1974) ("States may not permit recovery of presumed or punitive damages, at least when liability is not based on a showing of knowledge of falsity or reckless disregard for the truth.").

Shortly after *Gertz*, we issued *Gobin v. Globe Pub. Co.*, 216 Kan. 223, 531 P.2d 76 (1975) (*Gobin I*). Gary Dean Gobin alleged a Dodge City newspaper, published by Globe Publishing Company, printed defamatory statements. Gobin was a hog farmer, and the newspaper printed an article and photos falsely representing that Gobin pleaded guilty to animal cruelty. In fact, Gobin was charged and convicted but he never *pleaded* guilty, and the criminal case was ultimately dismissed. After his civil trial, the jury awarded Gobin $100,000 in damages. Gobin had not asserted injury to reputation or emotional distress. Globe appealed, and we explained "[t]he controlling issue upon this appeal is whether damage to one's reputation is an essential ingredient in an action for defamation." 232 Kan. at 4.

Pertinent to the issues here, we held:

"*Gertz*, as we pointed out in *Gobin I*, effected an immediate change upon the rule in Kansas and in those other states which presumed damages upon the establishment of libel per se, and permitted recovery based upon that presumption. Damages recoverable for defamation may no longer be presumed; they must be established by proof, no matter what the character of the libel." *Gobin III*, 232 Kan. at 5.

8

Further:

> "We conclude that in this state, *damage to one's reputation is the essence and gravamen of an action for defamation*. Unless injury to reputation is shown, plaintiff has not established a valid claim for defamation, by either libel or slander, under our law. It is reputation which is defamed, reputation which is injured, reputation which is protected by the laws of libel and slander." (Emphasis added.) *Gobin III*, 232 Kan. at 6.

We have reiterated this holding in subsequent opinions. *Hall*, 274 Kan. at 276; *Moran v. State*, 267 Kan. 583, 599, 985 P.2d 127 (1999); *Knudsen v. Kansas Gas and Electric Co.,* 248 Kan. 469, 474, 807 P.2d 71 (1991).

With this context in mind, we now turn to Swanson's two issues.

*Swanson Failed to Prove Injury to His Reputation*

Swanson argues there was sufficient evidence to establish reputational harm, so the panel majority erred by affirming the district court's decision to grant Marcus' motion for judgment as a matter of law. We disagree with Swanson and agree with the panel majority. The district court's holding was correct. As a matter of law, Swanson failed to prove injury to his reputation.

*Standard of Review*

A motion for a directed verdict is now referred to as a motion for a judgment as a matter of law. This court's standard of review of a ruling on a motion for a judgment as a matter of law is the following:

9

"'When ruling on a motion for directed verdict, the trial court is required to resolve all facts and inferences reasonably to be drawn from the evidence in favor of the party against whom the ruling is sought. Where reasonable minds could reach different conclusions based on the evidence, the motion must be denied. A similar analysis must be applied by an appellate court when reviewing the grant or denial of a motion for directed verdict.'" *Wilkinson v. Shoney's, Inc.*, 269 Kan. 194, 202, 4 P.3d 1149 (2000) (quoting *Calver v. Hinson*, 267 Kan. 369, Syl. ¶ 1, 982 P.2d 970 [1999]).

We owe no deference to the district court's decision. *Siruta v. Siruta*, 301 Kan. 757, 766, 348 P.3d 549 (2015).

*Discussion*

As we explained in *Gobin III,* "damage to one's reputation is the essence and gravamen of an action for defamation. Unless injury to reputation is shown, plaintiff has not established a valid claim for defamation, by either libel or slander, under our law." 232 Kan. at 6. Injury to reputation is "to diminish the esteem, respect, goodwill or confidence in which the [claimant] is held, or to excite adverse, derogatory or unpleasant feelings or opinions against him." *Moran,* 267 Kan. at 590. Reputational damage may be inferred so long as the inferences are reasonable. *Moran*, 267 Kan. at 590.

With these rules in mind, we turn to Swanson's claims of reputational harm. First, Swanson directs us to his 3.5 Yelp star rating as evidence that his reputation was harmed in the community. Neufeld testified the Swanson Center had 19 ratings on Yelp. Of these ratings, 18 were 5-star ratings, with Marcus' 1-star rating bringing the Swanson Center's overall rating to 3.5. Judge Warner suggests the 3.5-star rating was evidence that Swanson's reputation was affected "in a real [and] measurable sense." *Marcus*, 2022 WL 3570349, at *15.

10

We do not find this reasoning compelling. Proof of injury to reputation requires evidence to establish a causal relationship between the defamatory statements and the injury to Swanson's reputation. The defamatory statements at issue were the text of the Yelp post. These statements did not reduce the star rating. Rather, the 3.5-star rating was caused by Marcus' 1-star rating, which was mathematically aggregated with the other ratings to produce a numerical outcome. The 1-star rating itself was not defamatory because it was not a statement that may be true or false. It was an opinion. See *Kimzey v. Yelp! Inc.*, 836 F.3d 1263, 1269-70 (9th Cir. 2016) (Yelp star ratings are opinions). Put simply, the 3.5-star rating cannot establish reputational harm because the reduced rating was not caused by a defamatory statement. And even if we view the defamatory statements and the reduced star-rating as inseparable, Swanson has provided no evidence that the 3.5-star rating affected his reputation in the community. At most, Swanson testified that Yelp was important to potential customers and Neufeld worried the reviews might turn away future clients.

Swanson's second argument for reputational harm is that the content of the reviews deterred future patients. He testified:

> "I am hoping that maybe as a result of this that review can finally be taken down.
> Because not only does it bother me, of course it does, every time I check it for myself, it
> does bother me, it affects my reputation, which I worked really hard to try to *rebuild*.
> And I think because of its exposure on Yelp, which is like a number one review site, I
> think a lot of people see it, and I am sure—I can't quantitate. I don't know how many
> people have seen it and then never see me as a patient. But I have to think it is a lot. Just
> because this is just common knowledge. We all know that Yelp matters to businesses."
> (Emphasis added.)

Swanson here recognized his reputation had suffered for reasons unrelated to Marcus. Notably, Swanson had been publicly censured by the Kansas and Missouri

11

medical boards, had been a defendant in 30 malpractice lawsuits, had been the subject of several negative articles in the media, and had received other negative reviews online. Even so, Swanson had worked hard to rebuild his reputation and believed it was excellent. In fact, Swanson testified that in the year following Marcus' Yelp reviews his revenue, profit, and patient count increased. He continued to be published in peer reviewed journals, serve as a peer reviewer, and receive invitations to speak at professional conferences.

The other witness, Neufeld, testified that she sought treatment from Swanson both before and after Marcus' Yelp review. Neufeld had done research on potential physicians before her first procedure. She had discovered one of the negative articles but found it sensational and decided to meet Swanson anyway. She then had her procedure and was pleased with the results. She also conducted research before her second procedure. During this process, she came across Marcus' review of the Swanson Center and described it to Swanson when they met during her consultation. She wanted him to know it was posted because it could hurt his practice. She was concerned about how *others* might perceive Swanson after reading the Yelp review. It did not stop her from seeking out his care. She thought her second procedure had a positive outcome and posted a positive Yelp review to offset Marcus'. Based on this testimony, Swanson argues it is a reasonable inference that prospective clients who were unfamiliar with Swanson's work would be deterred.

Marcus replies that Swanson could not identify a single patient that was dissuaded. We acknowledge that would be difficult to do because Swanson is unlikely to have contact with potential patients who may have been dissuaded, but even so, Kansas law requires some evidence of reputational harm.

Evidence of reputational harm cannot be speculative. In *Clark v. Time, Inc.*, a country club manager brought a defamation claim based on a negative review posted online. The post referred to the manager as "Vlad the Impaler." The court dismissed the claim on summary judgment because, among other things, the plaintiff failed to prove reputational damage. Applying Kansas law, the court explained "plaintiff conceded . . . that he lost no business opportunities because of the article's publication." *Clark v. Time, Inc.*, 242 F. Supp. 3d 1194, 1217 (D. Kan. 2017). Moreover, plaintiff's argument "that his reputation has sustained damage because anyone who searches the internet for plaintiff's name will find the article is simply unsupported speculation." 242 F. Supp. 3d at 1217. The court noted the plaintiff "assumes that the reader will form a negative opinion about plaintiff after reading the article." 242 F. Supp. 3d at 1217. Both Swanson and Neufeld make similar assumptions.

In *Moran,* 267 Kan. 583, plaintiff was the former head of the University of Kansas Medical Center's Department of Cardiothoracic Surgery. Four KUMC administrators issued four communications, in newspapers or online, that criticized Moran and his stewardship of the heart transplant program. Moran filed a defamation claim, and the defendants moved for summary judgment. One issue was whether Moran suffered reputational harm. The district court granted summary judgment for the defendants, but this court reversed, despite the evidence for reputational harm being "unquestionably thin." 267 Kan. at 590. Moran's interrogatories revealed that, since the communications, he had received less interest in leading transplant programs at other hospitals and from academic journals. Also other publications stopped inviting him to submit articles. We explained:

> "Moran's beliefs, as expressed in his answers to interrogatories, do not amount to much by themselves. In order to amount to anything, the inferences Moran would have us draw must be reasonable. In the circumstances, a decrease after publication of defendants'

statements for requests for Moran's professional participation would seem to be the sort of detrimental consequence that might be expected from colleagues' defamatory statements about his professional conduct. Thus, it would be reasonable to infer a causal link between the decreased demand for his professional participation and the defendants' statements." 267 Kan. at 590-91.

The above passage shows that a reasonable inference must be tethered to a fact in the world, such as declining job or publication offers. From that fact, a reasonable inference can be made that there was a causal link between the defamatory statement and reputational harm. Here, neither Swanson nor Neufeld ties their reputational damage testimony to any external fact. We cannot find causation because Swanson never directs us to an effect. Rather, the relevant testimony relies on speculative statements about possible states of affairs.

Not surprisingly, Swanson did not know of potential patients who saw the review and declined to seek his services. Neufeld was concerned that others might not hire Swanson but provided no testimony that she, or anyone else, had considered Swanson but was discouraged or deterred because of Marcus' false review. Rather than demonstrating harm, Swanson testified instead to stable or increasing business and professional opportunities. Based on the testimony, Swanson's inferences of harm are unsupported by fact. He falls far short of the "unquestionably thin" evidence showing reputational harm in *Moran.* Kansas law requires more. See *Zaid v. Boyd*, No. 22-1089-EFM, 2022 WL 4534633, at *9 (D. Kan. 2022) (unpublished opinion) (noting "there must be specific facts to support the inference of reputational damage, such as lost sales, lost profits, 'a decrease after publication of defendants' statements for requests for [plaintiff]'s professional participation,' or a decline in clients or revenue"). We conclude that Swanson's second argument for causal proof of reputational harm is unpersuasive because the harm is speculative.

14

Swanson's third attempt to establish reputational harm is based on his testimony that he was personally upset by the Yelp reviews and devoted substantial time and resources to have the reviews taken down. Swanson enlisted his staff in this task and even hired a consultant, ultimately spending hundreds of hours on the project. But the injuries to Swanson's feelings and pocketbook are not reputational injuries. See *Gobin III*, 232 Kan. at 7. Reputational injuries are relational. See *Gomez v. Hug*, 7 Kan. App. 2d 603, 611-12, 645 P.2d 916 (1982) (quoting Prosser, Law of Torts, p.737 [4th ed. 1971]) "In either form, defamation is an invasion of the interest in reputation and good name. This is a 'relational' interest since it involves the opinion which others in the community may have, or tend to have, of the plaintiff."). Though pecuniary harm may be considered evidence of reputational damage, Swanson's economic injury was not caused by a third party's negative perception of him based on a reputational decline. Instead, the causal connection was from the false statements to his own mental anguish, not a damaged reputation. As Marcus persuasively argues, allowing this evidence to establish reputational harm would make any defamation claim actionable so long as the plaintiff spent time and money to counter the alleged defamatory statement.

Swanson makes other arguments. He first suggests the district court and majority panel erroneously required him to show "typical" defamation damages. Judge Warner levels a similar charge. *Marcus*, 2022 WL 3570349, at *15 (Warner, J., concurring in part and dissenting in part). The panel majority, however, correctly recognized the diversity of ways that defamation plaintiffs may prove reputational damage. *Marcus,* 2022 WL 3570349, at *11. The comparison to the facts of *Moran* and other cases does not seek to require such evidence, but to illustrate that Swanson did not marshal *any* evidence of reputational harm at trial. Along these lines, Swanson suggests the district court and the majority panel ignored controlling legal standards by reweighing evidence. But Marcus

15

correctly points out that the issue is not a reweighing of evidence, but that there was no evidence to be reweighed.

Next, Swanson argues the district court and panel majority erred by focusing on Swanson's counsel's statements in closing argument. Swanson is correct that closing arguments are not evidence. *Wilson v. Williams*, 261 Kan. 703, 710, 933 P.2d 757 (1997). The panel majority discussed the closing argument, and the district court referenced the argument in its order granting judgment as a matter of law. *Marcus,* 2022 WL 3570349, at *7. Nonetheless, we conclude the panel was correct that the district court referenced the closing argument merely to illuminate the lack of evidence on reputational harm, rather than as a basis for its ruling. In fact, the panel specifically explains the district court's analysis of the closing argument "tends to confirm the evidentiary gap but does not in any legal way establish it." *Marcus,* 2022 WL 3570349, at *7. We see no error.

Finally, Swanson briefly suggests the district court usurped the jury's fact-finding role and therefore denied him his constitutional right to a trial by jury. He made a similar argument before the panel, which appropriately recognized that this argument is not a standalone claim under the Kansas Constitution Bill of Rights section 5, but is a reframing of the "reweighing the evidence" argument using constitutional language. *Marcus*, 2022 WL 3570349, at *8. So the panel was correct that Swanson's argument fails.

Accordingly, we affirm the district court and panel majority's rulings that Swanson failed to establish reputational harm caused by the defamatory statements.

*Kansas Abolished Presumed Damages and Defamation Per Se*

Swanson's second issue on appeal asserts he was not required to establish reputational harm because the jury found Marcus acted with malice and the common law doctrine of defamation per se means damages are presumed. Put another way, Swanson asks us to hold that a finding of actual malice would relieve a claimant of proving reputational harm. Marcus responds that we abolished defamation per se and presumed damages in *Gobin III.* We agree with Marcus.

*Standard of Review*

We have unlimited review over interpretation of our precedents. *Scott v. Hughes*, 294 Kan. 403, 412, 275 P.3d 890 (2012). Additionally, the core question here poses a question of common law, which is inherently a question of law over which we have unlimited review. See *Wilkinson v. Shoney's, Inc.*, 269 Kan. 194, 203, 4 P.3d 1149 (2000) ("Whether to adopt or recognize a new cause of action falling within the common law of tort or negligence is a question of law over which we have unlimited review.").

*Discussion*

Marcus and the panel majority suggest we abolished defamation per se in *Gobin III*. *Marcus*, 2022 WL 3570349, at *3. We released *Gobin III* eight years after *Gertz*, explaining, "'Damages recoverable for defamation may no longer be presumed; they must be established by proof, *no matter what the character of the libel*.'" (Emphasis added.) *Gobin III*, 232 Kan. at 4. And "damage to one's reputation is the essence and gravamen of an action for defamation. Unless injury to reputation is shown, plaintiff has not established a valid claim for defamation, by either libel or slander, under our law." 232 Kan. at 6.

17

Swanson makes several arguments that we have not abolished presumed damages. First, he directs us to our discussion about whether other states required reputational harm before other damages could be recovered. From our reference to New York's law, he gleans: "[A]bsent proof of harm to reputation, a plaintiff may not recover damages for mental anguish on a claim of defamation unless plaintiff proves malice." 232 Kan. at 7.

The quotation Swanson relies on occurred in the context of a discussion of damage sequencing, which considers whether reputational injury must first be established before other damages are recoverable. After we concluded that injury to reputation was a requirement of any defamation action, we noted that Florida permitted plaintiffs to recover damages for mental anguish absent a showing of reputational harm. *Gobin III*, 232 Kan. at 6-7. We then observed that New York had a different rule. Next, we clarified that "[w]e agree with the New York rule that the plaintiff in an action for defamation must first offer proof of harm to reputation; any claim for mental anguish is 'parasitic,' and compensable only after damage to reputation has been established." 232 Kan. at 7; *Richie v. Paramount Pictures Corp.*, 544 N.W. 2d 21, 30 (Minn. 1996) (citing *Gobin III* and explaining "courts in other jurisdictions have found that New York does have a reputational harm prerequisite in defamation cases").

In *Moran*, we quoted *Gertz* to elaborate:

"'We need not define "actual injury," as trial courts have wide experience in framing appropriate jury instructions in tort actions. Suffice it to say that actual injury is not limited to out-of-pocket loss. Indeed, the more customary types of actual harm inflicted by defamatory falsehood include impairment of reputation and standing in the community, personal humiliation, and mental anguish and suffering. Of course, juries must be limited by appropriate instructions, and all awards must be supported by competent evidence concerning the injury, although there need be no evidence which

18

assigns an actual dollar value to the injury. '" 267 Kan. at 599 (quoting *Gertz,* 418 U.S. at 349-50).

In *Gobin III* we agreed with the sequencing of damages outlined in the New York rule but we also rejected the *Gertz* rule that reputational harm is not required if malice is shown. Thus our reference to the sequencing of damages—injury to reputation first, then other damages may follow—does not contradict *Gobin III'*s earlier statement that "[d]amages recoverable for defamation may no longer be presumed; they must be established by proof, no matter what the character of the libel." 232 Kan. at 5.

Second, Swanson argues that two post-*Gobin III* cases suggest malice may relieve a plaintiff from proof of reputation injury or damages. In *Turner v. Halliburton Co.*, 240 Kan. 1, 11, 722 P.2d 1106 (1986), we resolved the case and then explained "it is not necessary for us to consider the question of whether *Gobin [III]* requires actual proof of damage to reputation when the defendant is not a member of the news media." 240 Kan. at 11. In *Moran*, 267 Kan. at 593, we noted that "[h]aving determined that the district court erred in granting defendants' summary judgment, we do not reach the second issue raised of whether actual malice would relieve Moran of the burden of showing injury to reputation."

Swanson relies on these cases to argue that *Gobin III'*s abolition is not absolute, but our prior refusals to reach that issue means that we made no decision one way or another about the issue of absolute abolition. Put differently, *Gobin III'*s scope was not diminished in either *Turner* or *Moran*.

In fact, additional language from *Moran* supports Marcus' view. Perhaps because malice had not been alleged in *Gobin*, *Moran* first states:  "This court has not squarely decided whether in Kansas any and all defamation plaintiffs must allege and prove actual

19

damages rather than relying on the theory of presumed damages." *Moran*, 267 Kan. at 598. Regardless, *Moran* explained: "*Gertz* changed the law in Kansas. Damages recoverable for defamation, whether per se or not, could no longer be presumed but must be proven." 267 Kan. at 599. The latter statement supports the holding in *Gobin III*. And our most recent decision touching on the issue directly quotes *Moran*'s statement that defamation per se damages cannot be presumed. *Hall*, 274 Kan. at 276. We clarify here that defamation per se and presumed damages have been abolished in all instances.

Our interpretation of *Gobin III* is consistent with the way other courts have interpreted it. See, e.g., *In re Rockhill Pain Specialists, P.A.*, 55 Kan. App. 2d 161, 185-86, 412 P.3d 1008 (2017); *Polson v. Davis*, 895 F.2d 705, 708 (10th Cir. 1990); *RX Savings, LLC v. Besch*, No. 19-2439-DDC-JPO, 2019 WL 6974959, at *3 (D. Kan. 2019) (unpublished opinion) (quoting *Gobin III*, 232 Kan. at 5); *Waste Management of Texas, Inc. v. Texas Disposal Systems Landfill, Inc.*, 434 S.W.3d 142, 146 n.9 (Tex. 2014); *Bierman v. Weier*, 826 N.W.2d 436, 456 n.8 (Iowa 2013); *MacDonald v. Riggs*, 166 P.3d 12, 18 n.20 (Ala. 2007). Academic commentary also suggests we completely abolished defamation per se in *Gobin III*. Seager, *Jackpot! Presumed Damages Gone Wild—and Unconstitutional*, 31-WTR Comm. Law. 1, 31 (2015).

We recognize *Gobin III* places us in the minority. See Krieger, *Defamation Per Se Cases Should Include Guaranteed Minimum Presumed Damage Awards to Private Plaintiffs*, 58 San Diego L. Rev. 641, 662-63 n.133 (2021) (outlining the 40 states allowing for some form of presumed damages for defamation per se); Seager, 31-WTR Comm. Law. at 31 ("A majority of states have retained the common-law doctrine of presumed damages for defamation per se."). But U.S. Supreme Court precedent does not prohibit Kansas from abolishing presumed damages and thus increasing the protection for defendants in a defamation action. See *Bierman*, 826 N.W.2d at 449 ("Iowa can make its defamation law more protective of defendants than the First Amendment requires.").

Because *Gobin III* abolished defamation per se and presumed damages, we reject Swanson's argument to the contrary. Swanson frames his argument as a dispute over the proper reading of *Gobin III*, but Marcus correctly notes that Swanson's argument includes an implicit call to change the law and allow for defamation per se when actual malice is shown. Swanson's argument, therefore, implicates stare decisis concerns.

"Stare decisis recognizes that once a point of law has been established by a court, that point of law will generally be followed by the same court and all courts of lower rank in later cases when the same legal issue is raised." *In re Equalization Appeal of Walmart Stores, Inc.,* 316 Kan. 32, 62, 513 P.3d 457 (2022). "Stare decisis—while not a 'rigid inevitability'—serves as a 'prudent governor on the pace of legal change.'" *McCullough v. Wilson*, 308 Kan. 1025, 1035, 426 P.3d 494 (2018) (quoting *State v. Jordan*, 303 Kan. 1017, 1021, 370 P.3d 417 [2016]). The doctrine's application "'ensures stability and continuity—demonstrating a continuing legitimacy of judicial review.'" *Wilson*, 308 Kan. at 1035-36 (quoting *Crist v. Hunan Palace, Inc.*, 277 Kan. 706, 715, 89 P.3d 573 [2004]). Stare decisis considerations are particularly persuasive "in cases involving property and contract rights, where reliance interests are involved" and when "the legislature is free to alter a statute in response to court precedent with which it disagrees but declines to do so." *Crist*, 277 Kan. at 715 (reliance interests related to property and contract rights); *State v. Quested*, 302 Kan. 262, 278, 352 P.3d 553 (2015) (Legislature declining to alter).

"While 'stare decisis is not an inexorable command,' this court endeavors to adhere to the principle unless clearly convinced a rule of law established in its earlier cases 'was originally erroneous or is no longer sound because of changing conditions and that more good than harm will come by departing from precedent.'" *State v. Hambright*, 310 Kan. 408, 416, 447 P.3d 972 (2019) (quoting *State v. Spencer Gifts, LLC*, 304 Kan. 755, 766, 374 P.3d 680 [2016]).

21

The majority below suggests that changing circumstances might warrant a reconsideration of *Gobin III*. *Marcus*, 2022 WL 3570349, at *10. It notes defamation law was created before the internet age. Indeed, the tort has a long history tracing back to English courts. See Hirth, *Laying to Rest the Ecclesiastical Presumption of Falsity: Why the Missouri Approved Instructions Should Include Falsity as an Element of Defamation*, 69 Mo. L. Rev. 529, 529 (2004) ("Continually modified by kings, ecclesiastical courts, state legislatures, and the United States Supreme Court, the modern law of defamation is a thicket of presumptions, privileges, and plaintiff-specific pleadings.").

But we also recognize the importance of stability. *Gobin III* has been the law for over 40 years and has become universally accepted as abolishing defamation per se and presumed damages in Kansas. Today we reaffirm *Gobin III*'s holding and decline to upset the continuity that follows from its continued application. We are not convinced that *Gobin III* is no longer sound because of the internet, and we are not convinced that disturbing *Gobin III* would do more good than harm.

Other courts have disagreed. *W.J.A. v. D.A.*, 210 N.J. 229, 233, 43 A.3d 1148 (2012). But we find company with the New Mexico Supreme Court, which rejected a request to reimplement presumed damages in an internet era case, though the defamatory statement was not posted online. See *Smith v. Durden*, 276 P.3d 943, 943 (N.M. 2012) ("The issue before the Court is whether New Mexico requires a showing of injury to one's reputation to establish liability for defamation. We hold that it does, as injury to reputation is the very essence of the tort of defamation.").

In light of our holdings today, we need not reach Swanson's remaining arguments, which all depend on the availability of presumed damages or recoverable damages without proof of reputational injury.

CONCLUSION

Swanson failed to prove Marcus' defamatory statements injured his reputation. Consequently, he cannot show recoverable damages.

The judgment of the Court of Appeals affirming the district court is affirmed. The judgment of the district court is affirmed.

WALL, J., not participating.