NOT DESIGNATED FOR PUBLICATION

No. 125,934

IN THE COURT OF APPEALS OF THE STATE OF KANSAS

LAHA HOLDINGS,
*Appellee*,

v.

PROFESSIONAL SERVICE INDUSTRIES, INC.,
*Appellant*.

MEMORANDUM OPINION

Appeal from Johnson District Court; RHONDA K. MASON, judge. Oral argument held March 6, 2024. Opinion filed April 12, 2024. Affirmed.

*Mark E. McFarland*, of Hinkle Law Firm, LLC, of Lenexa, for appellant.

*Daniel R. Zmijewski*, of DRZ Law, LLC, of Leawood, for appellee.

Before WARNER, P.J., ATCHESON and BRUNS, JJ.

PER CURIAM: Professional Service Industries, Inc. (PSI) appeals from a jury verdict rendered in favor of Laha Holdings, LLC for breach of contract. Although PSI admitted liability at trial, it disputed the amount of the damages caused by its breach. After a three-day jury trial, the jury awarded the full amount of damages claimed by Laha Holdings. Subsequently, PSI filed a motion for a new trial, which was denied by the district court.

On appeal, PSI contends that the district court erred in denying its motion for new trial. It also contends that the jury's verdict was not supported by the evidence or the jury

1

instructions. Based on our review of the record, we conclude that the jury's verdict is supported by sufficient evidence and that the district court did not err in denying PSI's motion for new trial. Thus, we affirm.

FACTS

On June 27, 2005, Laha Holdings entered into a Design-Build Agreement with Turner Construction Company (Turner) for the construction of an office building in Overland Park. Upon completion of the building in 2007, Laha Holdings leased a portion of the property to its principal, Dr. David Laha, for his podiatry practice. The rest of the building remains unfinished. In 2007, Dr. Laha had plans to use the unfinished space as a surgery center.

Unfortunately, the building has experienced significant water intrusion issues since the completion of construction. Although Turner attempted to correct these issues for several years, it was unable to resolve them to the satisfaction of Laha Holdings. As a result, Laha Holdings filed a lawsuit against Turner for alleged construction defects. The lawsuit was ultimately settled, and the parties agreed to jointly retain an engineering consultant to evaluate the office building. They further agreed that Turner would pay a contractor to perform the repairs to the building that the consultant found to be necessary to resolve the water intrusion problems.

In a letter agreement dated May 15, 2015, PSI agreed to serve as an independent expert on behalf of Laha Holdings and Turner in connection with the office building. The engagement letter provided that PSI would "identify the causes of water intrusion occurring at the [building], identify any property damaged by water intrusion on the [building], and detail the repairs needed to:  (1) eliminate the water intrusion occurring at the [building]; and (2) repair or replace any property damaged by water intrusion on the [building] . . . ." In addition, the engagement letter provided that upon receipt of the

specified repairs recommended by PSI, Laha Holdings and Turner would jointly select a qualified contractor to complete the repairs that PSI determined were needed to eliminate the water intrusion and to repair water-damaged property.

Over the next several months, PSI visited the site and prepared a report setting out the repairs it deemed to be necessary to resolve the water intrusion issues and to repair the property. Laha Holdings and Turner then selected Haren and Laughlin Restoration Company, Inc. (HLR) to perform the repairs identified by PSI. It appears from the record that HLR began its work at the office building in mid to late 2016. On March 1, 2017, Laha Holdings received a punch list from PSI that listed tasks to be performed by HLR to complete the project. However, on May 1, 2017, Laha Holdings advised PSI that water intrusion was still occurring at the office building. It appears that PSI never returned to the building after that date.

On November 14, 2017, HLR contacted Carl Martin, a professional engineer, to inspect the office building for water intrusion and to prepare a remediation report. The following month, Martin delivered a report to HLR listing his recommendations. Based on these recommendations, HLR then provided a proposal to Laha Holdings. However, the proposal from HLR was not accepted by Laha Holdings at that time. Instead, Laha Holdings continued to seek assistance from PSI based on its guarantee in the letter agreement to detail the repairs needed to eliminate the water intrusion.

Because the water intrusion had not been resolved, Laha Holdings filed a lawsuit against PSI and HLR on February 13, 2019. In its petition, Laha Holdings asserted a breach of contract claim and a negligence claim against PSI. Additionally, it asserted a breach of contract claim and negligence claim against HLR. During the course of the litigation, Laha Holdings resolved its claims against HLR and HLR was voluntarily dismissed as a defendant. HLR then returned to perform repairs on the office building that were previously recommended by Martin.

3

Likewise, Martin returned to the office building in October 2020 to perform additional evaluations in an attempt to determine the various sources of the water intrusion. No additional repairs were recommended at that time because Martin advised that more testing was needed. Nevertheless, on March 16, 2021, Martin again returned to the building after HLR discovered moisture coming through the exterior façade of the building. HLR explained that in addition to the leakage at the base of the building, there was also evidence of water intrusion from above.

Martin advised HLR to suspend the repair work it was performing so that he could evaluate the entire building. Based on his additional evaluation, Martin determined that there was also water coming through the roof and that moisture was collecting inside the building's siding. On October 29, 2021, Martin produced a report that summarized his evaluations and recommended additional repairs required to make the office building waterproof. The report also suggested that some of the repairs to the foundation of the building that had previously been recommended were not necessary.

In the agreed pretrial order entered by the district court prior to trial, Laha Holdings alleged that it suffered damages in the amount of $277,500 to repair the office building. In addition, Laha Holdings alleged $9,817.50 in lost income per month because of its inability to rent the building. Furthermore, Laha Holdings alleged that it suffered these losses for 57 months, resulting in a loss of rental income of $559,597.50. Consequently, Laha Holdings claimed that it sustained a total amount of $837,097.50 in damages.

On March 28, 2022, the district court commenced a three-day jury trial. At trial, Laha Holdings presented the testimony of five witnesses. In addition, Laha Holdings offered 25 exhibits that were admitted into evidence. Although its counsel cross-examined the witnesses called by Laha Holdings and presented closing arguments to the

jury, PSI did not call any witnesses to testify or offer any exhibits for admission into evidence.

At trial, Laha Holdings called Lennox Cary, a project manager for HLR, who testified regarding the work performed on the office building by his company in an attempt to resolve the water intrusion based on the repairs identified by PSI. According to Cary, the conditions at the building did not match the details reported by PSI and, as a result, HLR came up with an alternative remediation plan. He explained that after PSI approved the alternative plan, HLR went forward with the repairs and had completed most of the work by March 2017.

Cary testified that because there was still water intrusion at the office building, HLR did another walk through of the building with PSI on March 29, 2017. He added that HLR continued to document water leaks in the building until May 1, 2017. On that date, Cary sent an email to PSI informing them of the documented water intrusions. He testified that he received no response from PSI until August 2017, when he was asked to provide an estimate for a "not for construction detail." Cary explained that HLR could not use this detail to fix the water intrusion because it was the same detail from PSI's original plans that HLR deemed unworkable based on the conditions it encountered at the office building.

Rather, Cary testified that HLR contacted Martin in November 2017, in an attempt to solve the continued water intrusion problems. In turn, Martin provided a report to HLR, which was used to create a proposal for Laha Holdings to consider. According to Cary, the new proposal was provided to Laha Holdings in January 2018. However, Laha Holdings did not authorize additional work to be performed by HLR at that time.

Laha Holdings' attorney, Christopher John Mohart, testified about his numerous attempts to get PSI to fix the water intrusion problems at the office building. Mohart

testified that he sent several emails to PSI in April and May 2017. In the emails, he reminded PSI of its responsibility under the agreement with Laha Holdings to eliminate the water intrusion and asking that they fulfill this obligation. Mohart testified that he met with HLR at the office building in May 2017 to discuss potential fixes. Mohart also testified that PSI failed to provide any information on how it would remedy the water intrusion after that time. Mohart explained that he continued to attempt to get PSI to repair the water intrusion problems up until the time he left private practice in early 2019.

Dr. David Laha testified that he authorized the filing of this lawsuit against PSI on behalf of Laha Holdings in February 2019, because "PSI wasn't doing anything to try to help out anymore. They weren't trying to design a fix and I think they were trying to lay blame elsewhere." Dr. Laha testified that he did not recall anyone from PSI ever returning to the office building after May 1, 2017. He explained that the January 2018 proposal from HLR based on Martin's updated report did not provide a guarantee that all the problems would be fixed.

According to Dr. Laha, he did not move forward with the new proposal because PSI had guaranteed that the water intrusion would be eliminated. He also testified that after he filed this lawsuit, he retained Martin to analyze the problems at the office building and to advise regarding the repairs that would be necessary. Dr. Laha explained that Martin had provided another report in October 2021, which included a new plan to remedy the water intrusion. Dr. Laha further testified that this work had not yet begun prior to trial because it could not be completed during the winter.

Regarding Laha Holdings' claim for lost rental income, Dr. Laha testified that the expenses for the office building were covered by the rent received from his podiatry practice. Consequently, he testified that the potential rental income from the unfinished side of the building would all be profit to Laha Holdings. Dr. Laha explained that although he originally planned for the unfinished side of the building to be used as a

surgical center, he now planned to rent it out to another doctor or entity for use as a medical office.

Martin testified that he prepared three reports regarding the repairs for the office building:  (1) a report to HLR dated December 13, 2017; (2) a report to HLR dated January 30, 2020; and (3) a report to Laha Holdings dated October 29, 2021. Additionally, Martin testified that he visited the building in November 2017, in October 2020, in March 2021, and in October 2021. Martin explained that Laha Holdings requested that he inspect the building again in March 2021 because HLR had begun the new repair work. According to Martin, this repair work had to stop because HLR encountered additional water intrusion issues.

Martin testified that his third report not only included the recommendations made in his previous reports but also addressed the newly discovered issues relating to water intrusion in the roof that seeped into the building's siding. He also testified that in his opinion all the water intrusion problems he found existed when PSI initially inspected the office building and that it could have found the same problems. Martin further opined that if PSI had done an appropriate job, then the work needed to complete all the repairs to remedy the water intrusion could have been completed by HLR in six months.

Brandon LaSala, a mortgage real estate broker who specializes in negotiating leases and sale transactions for medical office buildings, provided an expert opinion about the loss of rental income from the unfinished side of the office building. He based his estimates on this space being leased for use as a medical office. According to LaSala, Laha Holdings was losing rental income in the amount of $9,817.50 per month.

After Laha Holdings rested its case, PSI chose to rest its case without presenting any additional evidence. Likewise, PSI did not move for a judgment as a matter of law. Ultimately, the case was submitted to the jury under a breach of contract theory.

7

Although PSI admitted that it had indeed breached its obligations under the contract, it denied the amount of damages claimed by Laha Holdings.

The district court instructed the jury regarding the amount of damages it could award to Laha Holdings as a result of PSI's breach of contract:

> "If you find that the plaintiff is entitled to recover damages for breach of contract, in determining the amount of damages, the measure of damages is the reasonable cost to repair the property, not to exceed the sum of $277,500.00, the amount of Laha Holdings, LLC's claim for repairs, plus a reasonable amount to compensate for the loss of rental value of the property while the repairs are being made with reasonable diligence, but not to exceed the sum of $559,597.50, the amount of Laha Holding, LLC's claim for loss rental value.

> "The total amount of your verdict may not exceed the sum of $837,097.50, the total amount of Laha Holding, LLC's claim for breach of contract." (Jury Instruction No. 13.)

The district court also instructed the jury on PSI's defense that Laha Holdings had failed to mitigate its damages:

> "The defendant claims that plaintiff has failed to mitigate its damages. If you find that the plaintiff is entitled to recover damages for breach of contract, then in determining the amount of damages sustained by plaintiff, you should not include any loss which plaintiff could have prevented by reasonable care and diligence after the loss occurred. The defendant has the burden to prove that its claim is more probably true than not true." (Jury Instruction No. 14.)

After deliberation, the jury returned a verdict in favor of Laha Holdings in the amount of $837,097.50. Subsequently, PSI filed a motion for new trial in which it argued that the jury's verdict was contrary to the jury instructions and not supported by the evidence. This motion was denied by the district court in a memorandum decision entered on December 12, 2022.

8

In denying the motion, the district court noted that PSI did not challenge the $277,500 in damages awarded to Laha Holdings for repairs to remedy the water intrusion. Furthermore, the district court found that PSI did not object to the damages instruction and by implication recognized that there was evidence presented by Laha Holdings—if accepted by the jury—that could support a verdict for lost rental income up to $559,597.50. Finally, the district court found that PSI failed to carry its burden of proof on the affirmative defense of failure to mitigate damages and that there was evidence in the record that Laha Holdings "attempted to mitigate its damages, most notably that it was relying on [PSI] to identify [the] problems and the parties were negotiating to fix the same."

ANALYSIS

*Issues Presented*

On appeal, PSI does not deny that it breached its contract with Laha Holdings, nor does it challenge the amount of damages awarded to Laha Holdings by the jury for the cost of repairs. Rather, PSI challenges the amount of damages awarded by the jury to Laha Holdings for loss of rental income. Specifically, PSI argues that the award for loss of rental income is not supported by the evidence presented at trial or by the jury instructions. PSI also argues that the jury's verdict for loss of rental income is excessive because Laha Holdings failed to mitigate its damages.

In response, Laha Holdings contends that the damages awarded by the jury are supported by the evidence. It argues that the evidence presented at trial was sufficient to support a verdict not only for the cost of repairs but also the loss of rental income that resulted from PSI's breach of contract. In addition, Laha Holdings argues that PSI failed to meet its burden of proof on the affirmative defense of failure to mitigate damages.

9

*Loss of Rental Income*

When a jury's verdict is challenged for insufficiency of evidence or as being contrary to the evidence, we examine the record on appeal in the light most favorable to the prevailing party. In doing so, it is not our role to reweigh the evidence or pass on the credibility of the witnesses. If the evidence presented at trial supports the verdict, it should not be disturbed on appeal. See *Wolfe Electric, Inc. v. Duckworth*, 293 Kan. 375, 407, 266 P.3d 516 (2011) (sufficiency of evidence); see also *Unruh v. Purina Mills*, 289 Kan. 1185, 1195, 221 P.3d 1130 (2009) (contrary to evidence). Likewise, we review the district court's decision to deny a motion for new trial for an abuse of discretion. See *City of Mission Hills v. Sexton*, 284 Kan. 414, 421, 160 P.3d 812 (2007) (denial of a motion for new trial "will not be disturbed on appeal unless there is a showing of an abuse of that discretion").

The Kansas Supreme Court has held that a reviewing court must accept as true the evidence and all the inferences to be drawn from it which support or tend to support the jury's verdict, while disregarding any conflicting evidence or other inferences that could be drawn from the evidence. *Unruh*, 289 Kan. at 1196. The *Unruh* court stated,

> "When a jury's findings are attacked as being based on insufficient evidence or being contrary to the evidence, this court's power begins and ends with a determination of whether there is evidence to support those findings. If the evidence supports the jury's findings, this court will not disturb them on appeal. It is of no consequence that contrary evidence might have supported different findings if believed by the jury." 289 Kan. at 1196.

Here, the district court instructed the jury that it could award "a reasonable amount to compensate for the loss of rental value of the property while the repairs are being made with reasonable diligence, but not to exceed the sum of $559,597.50, the amount of Laha Holdings, LLC's claim for loss rental value." (Jury Instruction No. 13.) Moreover, PSI

did not object to this instruction, nor does it challenge its validity on appeal. Instead, it argues that there is no evidence in the record to support the jury's award of the full amount of $559,597.50 for Laha Holdings' loss of rental value.

As the Kansas Supreme Court has held, a district court must "give an instruction supporting a party's theory if the instruction is requested and there is evidence supporting the theory which, if accepted as true and viewed in the light most favorable to the requesting party, is sufficient for reasonable minds to reach different conclusions based on the evidence." *Puckett v. Mt. Carmel Regional Med. Center*, 290 Kan. 406, 419, 228 P.3d 1048 (2010). As a result, the giving of jury instruction No. 13 by the district court—without an objection from PSI—suggests that there was evidence presented at trial upon which a reasonable juror could conclude that $559,597.50 was a reasonable amount to compensate Laha Holdings for the loss of rental income resulting from PSI's breach of contract.

Although damages need not be proven with absolute certainty, there must be at least a reasonable basis to enable a jury to arrive at an approximate sum of damages. *Wolfe Electric, Inc.*, 293 Kan. at 395 (quoting *Puckett,* 290 Kan. 406, Syl. ¶ 3). In the present case, there was evidence presented that Laha Holdings had lost rental income for up to 57 months—beginning in June 2017 and running until the trial began in March 2022—based on testimony of Dr. Laha and Mohart that PSI failed to take steps to remediate the water intrusion after May 2017. Likewise, there was evidence presented through the testimony of LaSala that Laha Holdings was losing rental income in the amount of $9,817.50 per month over this period.

Also, Martin, Dr. Laha, Mohart, and Cary each testified about the nature and extent of the water intrusion problems encountered at the office building and the difficulties in getting PSI to fulfill its contractual obligation to remediate the water intrusion. These witnesses informed the jury that between May 2017 and February 2019,

11

Laha Holdings was communicating with and requesting PSI provide the repairs necessary to eliminate the water intrusion issues at the office building. Dr. Laha testified that his attorney, Mohart, went back and forth with PSI "for a couple of years about . . . what the fix was going to be and who would cover the fix or pay for the fix." Mohart confirmed that he attempted to get PSI to fix the water intrusion problem from April 2017 until he left private practice in early 2019. Dr. Laha also testified that these failed attempts to resolve the dispute led Laha Holdings to file this lawsuit in February 2019.

Dr. Laha also testified that after the lawsuit was filed, he continued to take steps to repair the water intrusion into the office building. He explained that he retained Martin to analyze the building and advise what kind of repairs should be performed at that point. In turn, Martin testified that he visited the building multiple times from 2017 through 2021. Although HLR began to make additional repairs in March 2021, the work had to stop because they encountered more water intrusion issues.

Martin further testified that he prepared his final report in October 2021 to address these new issues. However, as Dr. Laha explained, the work to implement the repairs identified in Martin's final report had not yet begun as of the trial date because the work could not be completed during winter. Accordingly, we find that the testimony presented at trial was sufficient—when viewed in the light most favorable to Laha Holdings as the prevailing party—to support a finding by the jury that reasonable diligence was exercised to repair the office building from June 2017 until the trial began in March 2022. Accordingly, we conclude that there was sufficient evidence presented at trial to support the jury's verdict of $559,597.50 in loss of rental income caused by PSI's breach of contract and that the verdict was consistent with jury instruction No. 13.

12

*Mitigation of Damages*

PSI also argues that the jury's verdict should be set aside because Laha Holdings failed to mitigate its damages. Mitigation of damages is an affirmative defense, and the burden of proof is on the party—in this case PSI—who asserts a failure to mitigate. See *Leavenworth Plaza Assocs., L.P. v. L.A.G. Enterprises*, 28 Kan. App. 2d 269, 272, 16 P.3d 314 (2000). Likewise, "[t]he duty to mitigate damages is not an unlimited one and an injured party is required only to exert reasonable efforts to prevent or minimize his damages within the bounds of common sense." *Steele v. J. I. Case Co.*, 197 Kan. 554, Syl. ¶ 5, 419 P.2d 902 (1966). Hence, PSI had the burden to prove this affirmative defense at trial.

At trial, the district court appropriately instructed the jury in instruction No. 14 regarding PSI's affirmative defense that Laha Holdings had failed to mitigate its damages. Again, PSI did not object to the instruction, nor does it challenge the instruction on appeal. As indicated above, this instruction advised the jury that "in determining the amount of damages sustained by [Laha Holdings], you should not include any loss which [it] could have prevented by reasonable care and diligence after the loss occurred." The instruction also advised the jury that PSI had "the burden to prove that its claim is more probably true than not true."

Nevertheless, the jury awarded Laha Holdings the entire amount of the damages which it claimed. On appeal, PSI suggests that "[s]uch an award without deduction would indicate that [Laha Holdings] mitigated its damages, and acted with reasonable care and diligence after the loss occurred, which is contrary to the evidence and the law." Of course, it is just as likely that the jury found that PSI failed to meet its burden to prove a failure to mitigate.

13

As discussed above, PSI did not present the testimony of any witnesses or offer any exhibits into evidence at trial. Instead, it simply attempted to rely on cross-examination of the witnesses called by Laha Holdings. In addition, PSI presented the arguments of counsel but "closing arguments are not evidence." *Marcus v. Swanson*, 317 Kan. 752, 763, 539 P.3d 605 (2023). Although it is theoretically possible to do so, it is much more difficult for a party to meet its burden of proof under these circumstances.

In its memorandum decision denying PSI's motion for new trial, the district court determined that PSI had failed to carry its burden to prove that Laha Holdings failed to mitigate damages. The district court explained:

> "[The] jury found that [PSI]'s affirmative defense of failure to mitigate did not bar [Laha Holdings'] damages. This burden was [PSI]'s to carry. And mitigation is analyzed using a reasonability standard, which is an inherent question of fact. A damaged party is only required to exert reasonable efforts to prevent or minimize [its] damages within the bounds of common sense. [Laha Holdings] provided evidence that it attempted to mitigate its damages, most notably that it was relying on [PSI] to identify problems and the parties were negotiating to fix the same. [Laha Holdings] also submitted testimony that it attempted to begin repairs, but that the cost exceeded estimates. These are pieces of evidence [the] jury could have relied on in reaching its verdict and not giving credence to [PSI]'s mitigation affirmative defense."

We agree with the district court's analysis of this issue.

As addressed in the previous section of our opinion, Laha Holdings presented sufficient evidence—when viewed in a light most favorable to it as the prevailing party—to establish its claim for damages. Even though PSI had the burden to prove that Laha Holdings failed to use reasonable efforts to mitigate damages, it was unable to convince the jury, and—as discussed above—it is not our role to reweigh the evidence or to determine the credibility of witnesses. See *Leavenworth Plaza Associates, L.P.*, 28 Kan. App. 2d at 274. Consequently, we find no reason to disturb the jury's verdict on appeal.

CONCLUSION

In conclusion, after examining the record on appeal in the light most favorable to Laha Holdings as the prevailing party, we find that there is sufficient evidence to support the jury's award of damages in this case. Likewise, we do not find the jury's verdict to be contrary to the evidence or to the jury instructions. Accordingly, we do not find that the district court abused its discretion in denying PSI's motion for new trial and we affirm the jury's verdict.

Affirmed.